## WESTERN STONE COMPANY

*v.*

## JOHN WHALEN.

*Filed at Ottawa, June 19, 1894.—Rehearing denied, October Term, 1894.*

1. MASTER AND SERVANT—*negligence in employing and keeping incompetent servants.* Whether a master is guilty of negligence in the employment and retention of an unskillful and incompetent servant in charge of the master's work or business, whereby a fellow-servant is injured, is a question of fact, which is conclusively determined by the judgment of the Appellate Court approving the finding of the trial court.

2. Negligence on the part of the master is not to be presumed from the negligence of a servant, but, in order to render the master liable for injuries sustained by one servant from the negligence of another, some sort of evidence of negligence on the part of the master, either in the employment or retention of the servant, must be shown; and the servant's general reputation for unfitness may be sufficient to overcome the

presumption that the master used due care in his selection, even though actual knowledge of such reputation or unfitness on the master's part is not shown.

3. SAME—*negligence of master—of general reputation of servant.* It is clearly sufficient for a servant, injured by the incompetency of a fellow-servant, to prove that such fellow-servant's incompetency was actually known to the master, or to its responsible representative, or that either of them had received information of the fact sufficient to put a reasonably prudent man upon inquiry, or that the servant had a general reputation for incapacity, to such an extent, that, if the master had maintained a habit of vigilant supervision and inquiry, he would probably have learned the fact.

4. SAME—*of the risks assumed by the servant—negligence of fellow-servant.* The servant, upon entering the employment of his master, is held to assume the natural, ordinary risks incident to the business in which he engages, and impliedly contracts that the master shall not be liable for injuries consequent upon the negligence of a fellow-servant, in the employment of whom the master has exercised due and proper care.

5. SAME—*duty of master to employ competent servants.* It is the duty of the master to exercise ordinary and reasonable care in the employment and selection of careful and skillful co-employés. Ordinary care in the employ of servants, requires a degree of diligence and caution proportionate to the exigencies of the particular service. It is such care as a reasonably prudent person would exercise, in view of the consequences that might reasonably be expected to result, if an incompetent, careless, or reckless servant was employed for the particular duty.

6. Where a master employs a servant to engage in a business known to be hazardous, and where the proper and safe discharge of the duty requires a high degree of care, skill and diligence, the master will be held, in the selection of the servant, to the exercise of care reasonably commensurate with the perils and hazards likely to be encountered in the performance of the duty. And the master impliedly contracts with each servant that he has and will discharge that duty, and the servant may, without sufficient appearing to put him upon notice to the contrary, rely upon the due and reasonable performance of it by the master.

7. Where the service in which the servant is employed is such as to endanger the life and persons of co-employés, the master, upon engaging said servant, is required to make reasonable investigation into his character, skill and habits, and a failure to make such investigation, is negligence on the part of the master; and he will be held liable for an injury to a co-employé, occasioned either by the negligence, incapacity, or intemperance of said servant.

8.  Where an injury has occurred through the incompetency, reck-lessness or unskillfulness of a servant who was generally known and reputed to be unfit, reckless or unskillful, evidence of the fact that he was generally so reputed, is competent as tending to show that the master, by the exercise of that ordinary and reasonable care required in his employment, could and ought to have known of his unfitness, want of skill and reckless habit. Proof of specific acts of negligence is also competent.

9.  In such case, it is unimportant whether the master in fact knew of the character and habit of the servant. The master's ignorance it-self is negligence in a case in which any proper inquiry would have ob-tained the necessary information, and when the duty to inquire is plainly imperative.

10.  A servant entering the employment of a master has a right to assume that the master has discharged its duty in selecting his co-employés, and may act upon that assumption in the absence of anything putting him upon notice to the contrary. But whether there is evidence of facts sufficient to put him on notice and require him to quit the serv-ice, or assume the extra hazards, is a question of fact which this court is precluded from investigating.

11.  SAME—*notice of unfitness of fellow-servant.* If a servant, suing his master for an injury resulting from the negligence of one as cap-tain of a steamboat, knew, or by the exercise of reasonable care and dil-igence could have known, the reputation of the captain for carefulness and skillfulness in the management of his vessel before and at the time of the injury, he will be chargeable with notice of whatever that rep-utation was; and if such reputation was bad, he should not have exposed himself to the consequences liable to result.

12.  An instruction which ignores the necessity for the exercise of reasonable care and diligence on the part of the plaintiff, and by which the jury are required to balance the opportunities as between the plaintiff and defendant merely, without any guide as to what extent either party is chargeable with knowledge of the fact, is faulty.

13.  While specific acts of recklessness, carelessness or incompetency may, under the circumstances of the particular case, be competent, as tending to show that the employer could and ought to have known of the character and habits of his servant, on the other hand, when the reputation of the servant is competent to be shown, it is the general reputation only.

14.  PRACTICE—*refusing special interrogatories to the jury.* Where the court submits to the jury all the special interrogatories that are of im-portance, or which have any controlling effect upon their verdict, and those refused relate to evidentiary facts, and not to the finding of any ultimate or controlling fact, it can not be said there is any abuse of dis-cretion in the refusal of the same.

15.  ARREST OF JUDGMENT—*defects in the declaration.*  Where a good cause of action is defectively stated in a declaration, the sufficiency of the declaration can not be urged on motion to arrest the judgment.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding.

This was an action for personal injuries sustained by appellee, resulting in the loss and amputation of his leg below the knee.   Appellant owned a steam propeller used in towing its canal boats and barges through the waters of the Illinois and Michigan canal and Chicago river, which was under the control and management of Captain Cooley. Appellee was in charge of the "Rescue," one of the many barges owned and operated by appellant in carrying stone from Lemont to Chicago.   The custom was, in making up the fleet, for the propeller, of which Cooley was captain, to take either two or three boats at a time.   Cooley received orders to tow out three barges, the "Rescue, "Brown" and "Servia."   He first took up the "Servia," and ordered the "Rescue" and "Brown" to be made fast to her.   The "Brown" was lashed to the stern of the "Rescue," which was in turn to be attached by line to the "Servia," thus completing the tow.   The contention was, that by the negligence and recklessness of the captain of the propeller, in running too fast, etc., Whalen was caught in the tow line and his leg crushed against the Sampson post, etc.

The trial resulted in a verdict and judgment for the plaintiff, which, on appeal to the Appellate Court, was affirmed.

Among other instructions asked, the following requests for special findings were given and answered.

2d.   Was it necessary for the captain of the steamboat "Excelsior" to run that boat at a higher rate of speed

than usual in order to keep her headway, or to keep her from blowing across the river? A. No.

3d.   Did the plaintiff use his tow-line to fasten the canal-boat "Rescue" to the tow? A. Yes.

6th.   Did the plaintiff see and know of the rate of speed at which the "Excelsior" was going, before and at the time of the injury? A. He knew the rate of speed immediately before the injury, but not at the time of the injury.

7th.   Was the "Excelsior" going at too great a rate of speed? A. Yes.

8th.   Was she going at such a rate of speed as to make it dangerous to attempt to make fast to the "Servia?" A. No; not if Captain Cooley had slacked down his speed.

9th.   Was she going, just before and at the time of the accident, at a dangerous rate of speed? A. Yes.

11th.   Did the accident happen from his being caught in the tow-line? A. Yes

12th.   Was his leg caught in the tow-line and dragged against the Sampson post? A. Yes.

13th.   Did the fracture and injury to his leg happen in this way? A. Yes.

16th.   Could the plaintiff, by the exercise of ordinary care, have avoided the alleged accident? A. No.

17th.   Was the plaintiff a co-employé with Captain Cooley? A. Yes.

18th.   Was he associated with Captain Cooley and engaged in the same line of business, at the time of the alleged injury, namely, making up the tow? A. Yes.

19th.   Was Captain Cooley guilty of negligence in running the "Excelsior" at too high a rate of speed? A. Yes.

20th.   Did the injury to the plaintiff occur from the negligence of Captain Cooley in running the "Excelsior" at too high a rate of speed? A. Yes.

21st.  Was the danger from which the injury resulted, one which the plaintiff was acquainted with or might have foreseen, by the exercise of ordinary care and prudence? A. No.

23d.  Was the plaintiff guilty of negligence in placing himself in a dangerous position, but for which the accident would not have happened?   A. No.

24th.  Was the plaintiff's negligence gross when compared with that of the defendant?   A. No.

25th.  If you believe from the evidence that, after the employment of said Cooley, and before the said alleged accident, his reputation for being a competent, careful and skillful man in running and operating the said steamboat "Excelsior" was bad, do you find from the evidence that the defendant's manager had any notice of such fact?   A. No.

Other facts necessary to an understanding of the case are stated in the opinion.

Messrs. SCHUYLER & KREMER, for the appellant:

A servant assumes all the risks of the service, including the negligence of fellow-servants. *Simmons* v. *R. R. Co.*, 110 Ill. 340; *I. C. R. R. Co.* v. *Cox*, 21 id. 20; *C. & N. W. Ry. Co.* v. *Donahue*, 75 id. 108; *Abend* v. *R. R. Co.*, 111 id. 208; *U. S. Rolling Stock Co.* v. *Wilder*, 116 id. 101.

It is the duty of the servant to notify the master of the incompetency of a fellow-servant, and if the master refuses to discharge the incompetent or otherwise unfit servant, the complaining servant will have no alternative but to quit the master's employment. *Russell* v. *Tillotson*, 140 Mass. 201; *C., R. I. & Pac. Ry. Co.* v. *Lonergan*, 118 id. 41; *Coal Run Coal Co.* v. *Jones, Admrx.*, 127 id. 379; *C. & N. W. Ry. Co.* v. *Snyder*, 117 id. 376.

It is, furthermore, held that a plaintiff must use all reasonable precautions to avoid an obvious and impending

danger. *Ryan* v. *Porter Mfg. Co.*, 10 N. Y. Sup. Ct., 57 Hun, 253, 589; *Ill. Cent. Ry. Co.* v. *Neer*, 31 Ill. App. 126; *Harris* v. *Mo. & Pac. Ry. Co.*, 40 Mo. App. 225; *Delaware & H. C. Co.* v. *Wall*, 54 Hun, 454.

On the question of what constitutes a co-servant, within the law of this State, see *Chicago & N. W. Ry. Co.* v. *Moranda*, 93 Ill. 302; *Clark* v. *C., B. & Q. Ry. Co.*, 92 id. 43; *Stafford* v. *C., B. & Q. Ry. Co.*, 114 id. 245; *Valtez* v. *O. & M. Ry. Co.*, 85 id. 500; *Rolling Mill Co.* v. *Johnson*, 114 id. 57.

Single acts of negligence have been held to be incompetent to charge the employer with notice of the incompetency and negligence of an employé. *Baulee* v. *N. Y. Central Ry. Co.*, 59 N. Y. 356; *Eastline Red Riv. Ry. Co.* v. *Scott*, 71 Texas, 703; *Buckley* v. *Gould & C. S. M. Co.*, 14 Fed. Rep. 833; *Goff* v. *T. & S. T. Ry. Co.*, 28 Ill. App. 531; *B. & O. R. R. Co.* v. *Colvin*, 118 Pa. St. 240.

The plaintiff's knowledge, or means of knowledge, of the incompetency of Captain Cooley to run and operate a steamboat, and of his reputation along the canal from Chicago to Lemont was the same, if not greater than that of the defendant, and he is, therefore, charged with notice of the bad reputation of Captain Cooley, if such was the fact.

"The employé must be incompetent, and the master guilty of negligence in his employment or retention, or no liability can be predicated on his acts, and the same is true if the servant injured has the same knowledge, or means of knowledge, of his unskillfulness as the master has." *Haskin* v. *N. Y. Cent. Ry. Co.*, 65 Barbour (N. Y.), 129; *Warner* v. *Erie Ry. Co.*, 39 N. Y. 468; *Faulkner* v. *Erie Ry. Co.*, 49 id. 325; *Wright* v. *N. Y. Cent. Ry. Co.*, 25 id. 562.

As to the risks assumed by a servant, see *Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548; *Keegan* v. *Western Ry. Co.*, 4 Seld. 175; *Skitt* v. *Eastern Counties Ry. Co.*, 24 Eng. L. & D., 396; *Williams* v. *Clough*, 3 H. & N.,

257; *Cagney* v. *R. R. Co.*, 69 Mo. 416; *Davis* v. *R. R. Co.*, 20 Mich. 105; *Baltimore Elevator Co.* v. *Neal*, 65 Md. 454, 455; *Chicago & E. Ill. Ry. Co.* v. *Geary*, 110 Ill. 383; *C., B. & Q. Ry. Co.* v. *Dewey, Admrx.*, 26 id. 255; *C., B. & Q. Ry. Co.* v. *Payne*, 49 id. 499; *Chicago & A. Ry. Co.* v. *Murray*, 62 id. 326; *Aurora Branch Ry. Co.* v. *Grimes*, 13 id. 585; *Ohio & M. Ry. Co.* v. *Eaves*, 42 id. 288; *I. C. Ry. Co.* v. *Middlesworth*, 43 id. 64.

The declaration is not sufficient to sustain a judgment. *L. S. & M. S. Ry. Co.* v. *Stupak*, 123 Ind. 228; *Joliet Steel Co.* v. *Shields*, 134 Ill. 214; *Matson* v. *Swanson*, 131 id. 255; *Culver* v. *Bank*, 64 id. 528; *Stearns* v. *Cope*, 109 id. 340.

Messrs. DUNCAN & GILBERT, for the appellee:

The general reputation of Hiram Cooley, before and down to the time of the injury complained of, for carefulness, prudence and skill, in the running and management of a steamboat, was properly admitted. Woods' Master and Servant, sec. 420; Shearman & Redfield on Negligence, sec. 223.

Liability of master for negligence in the selection and retention of servants, see *Gilman* v. *Eastern R. R. Co.*, 10 Allen, 232; *Gilman* v. *Eastern R. R. Co.*, 13 id. 444; *L. S. & M. S. Ry. Co.* v. *Stupak*, 123 Ind. 225; *Davis* v. *D. & M. R. R. Co.*, 20 Mich. 124; *Hatt* v. *Nay*, 144 Mass. 186; *Monahan* v. *Worcester*, 150 Mass. 439; *Grube* v. *Mo. Pac. Ry. Co.*, 98 Mo. 330; *Hilts, Admr., etc.*, v. *C. & G. T. Ry.*, 55 Mich. 437; *Lee* v. *Mich. C. R. R. Co.*, 87 id. 574; Am. & Eng. Cyc. of Law, vol. 7, p. 852.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

As we understand this record, the right of recovery by plaintiff, under the first and third counts of his declaration, is eliminated by the finding of the jury that Cooley, captain of the steam propeller, and the plaintiff were fellow-

servants in the same line of employment. And this, as we understand, is conceded by counsel on both sides. And it seems clear that the recovery was predicated, and by the court permitted to stand upon the second count of the declaration, which alleged, among other things, that it was the duty of the defendant to employ a prudent and competent captain for said steam propeller, but the defendant, disregarding its duty in that behalf, employed one who was incompetent, etc., which was unknown to the plaintiff, and that by reason of the incompetency, etc., of said captain, the plaintiff, while in the exercise of due and proper care and caution on his part, was injured, etc.

The jury were requested to make, and made, as will be seen from the foregoing statement, a number of special findings at the instance of appellant. The jury found that the propeller was run at an unusual, too great, and a dangerous rate of speed in making up the fleet, and at the time of the injury to plaintiff; that the rate of speed was not dangerous, if the captain of the propeller had slackened it when attempting to pick up the "Rescue," of which plaintiff was in charge; that the plaintiff knew the rate of speed at which the propeller was going before, but not at the time of the injury; that Cooley was guilty of negligence in running the propeller at too high a rate of speed, and that the injury to plaintiff resulted from such negilence. They also specially found that the plaintiff could not, by the exercise of ordinary care, have avoided the injury; that the danger from which the injury resulted was not one which might have been foreseen by the plaintiff in the exercise of ordinary care and prudence; and that the plaintiff was not guilty of negligence in placing himself in a dangerous position, etc. They also found that the plaintiff and Cooley, captain of the propeller, were fellow-servants.

No instruction was given on the part of the plaintiff, except one announcing the general rule to be observed in determining the weight to be given to the testimony of the various witnesses.

By the second instruction given on behalf of appellant, the jury were told, that if they found that plaintiff and Cooley were co-employés engaged in the same line of service, then, although the jury believed that the injury was occasioned by the negligence, carelessness or unskillfulness of Cooley, the plaintiff could not recover, unless they further believed from the evidence that in the employment of said Cooley, as Captain of said steam propeller, the defendant did not exercise ordinary care and caution. The third instruction given for appellant was to the same effect, and informed the jury that although they believed that Cooley ran the steam propeller at too high rate of speed, and that in doing so he run and operated the same in a negligent and careless manner, and that the injury resulted from such negligence, this was one of the risks assumed by plaintiff in entering into the employment, and plaintiff could not recover "unless the jury shall further believe from the evidence that said defendant was guilty of a want of ordinary care and prudence in employing said Cooley."

Without extending the discussion, it seems manifest, from the course of the trial, the instructions of the court and the findings of the jury, that the right of the plaintiff to recover depended upon the question of whether defendant was or was not guilty of negligence in the employment and retention of said Cooley, as captain of its steam propeller, used in making up and transporting its fleet of boats.

Whether the defendant was guilty of negligence in the respect indicated, was a question of fact, which has been conclusively determined against appellant by the judgment of the Appellate Court, approving the finding of the lower court upon questions of fact.

It only remains to consider, whether error intervened in the rulings of the court in the admission of testimony, and upon instructions, and in overruling the motion in arrest of judgment.

The plaintiff, for the purpose of carrying knowledge home to the defendant, of the incompetency and reckless character of the person they had employed as captain of their towing vessel, offered proof tending to show the general reputation of said captain, as to prudence and carefulness in running and managing the steamboat, and that such general reputation was bad, along the line of the Illinois and Michigan canal and Chicago river, where the defendant was transacting its business. It appeared from the evidence that he had been engaged in that business about nine years, as we understand it, upon the same waters. It is objected that no time was fixed, to which the attention of the witnesses was called. We think the objection without merit. Aside from the general rule, that a state of facts once shown to exist is presumed to continue until the contrary is made to appear, the attention of the witnesses was sufficiently directed to cover the time while he was so running upon such waters. It is not questioned that there was evidence before the jury tending to show that the captain was guilty of negligence from which the injury resulted, and it became important and proper for plaintiff to show, if he could, that the defendant was guilty of negligence in employing him and keeping him in command, in making up and transporting their fleet of boats.

It is insisted by counsel for appellant, that evidence offered for the purpose of charging a principal with notice, in actions of this character, should be of specific acts of negligence and carelessness, to be proved as facts, and that proof of general reputation, as to the manner of running and operating the boat, was insufficient and incompetent as evidence tending to charge the defendant with notice of the fact of the incompetency or unskillfulness of the person employed. That proof of such specific acts is competent seems to be well settled. (See Note, Sec. 431, Wood's Law of M. & S., and cases there cited.) Thus in *Hilts, Admr.* v. *C. & G. T. R. R. Co.*, 55 Mich. 437, the court

say: "When, however, as in this case, through the negli-gent act of a servant, who was in an intoxicated condition, and when it is further shown that he was in the habit of drinking intoxicating liquors to excess, such habit had ex-tended over a period of nine months while in the defend-ant's employ, and no actual knowledge or notice ever reached any superior officer, we think the jury may be jus-tified in concluding from such evidence, that the defendant was negligent in failing to learn such habit, and retaining the engineer in its employment." See also, *Gilman* v. *Eastern Ry.*, 10 Allen, 333; *Gilman* v. *Eastern Ry.*, 13 id. 444; *Monahan* v. *Worcester*, 150 Mass. 139; *Grube* v. *Mo. P. Ry. Co.*, 98 Mo. 330; *Lee* v. *Railroad Co.*, 87 Mich. 574.

It seems, however, that when it becomes material to prove the character of a servant by whose negligence the injury has happened, as where the contention is that the master has violated his duty in employing an unskillful and incompetent servant, evidence of general reputation of the servant is competent. 2 Thomp. on Neg. 153. Wood on M. and S. Sec. 420, says: "*   *   Negligence on the part of the master is not to be presumed from the negligence of a servant, but in order to render him liable for injuries sus-tained by one servant from the negligence of another, some sort of negligence on the part of the master, either in the employment or retention of the servant, must be shown, and the servant's general reputation for unfitness may be sufficient to overcome the presumption that the master used due care in his selection, even though actual knowledge of such reputation or unfitness on the master's part is not shown."

Shearman and Redfield, (Law of Neg.) Sec. 223, is as follows: "In applying the rule just stated, it is clearly sufficient for a servant, injured by the incompetency of a fellow-servant, to prove that such fellow-servant's incom-petency was actually known to the master, or to his respon-

sible representative to whom the power of discharging had
been delegated, or that either of them had received infor-
mation of the fact, sufficient to put a reasonably careful
man upon inquiry, or that the servant had a general repu-
tation for incompetency, to such an extent that, if the
master had maintained a habit of vigilant supervision and
inquiry, he would probably have learned the fact.''

We quote these text-writers, Thompson, Wood, and
Shearman and Redfield, as showing the consensus of opin-
ion among standard authors upon this question. It will be
found that they are supported by a large number of well
considered cases, and indeed what seems to be the clear
weight of authority. See 7 Am. and Eng. Enc. of L., p.
852; *L. S. & M. S.* v. *Stupak*, 123 Ind. 210; *Hatt* v.
*Nay*, 144 Mass. 186; *Davis* v. *D. & M. R. R. Co.*, 20
Mich. 124; and cases *supra*. See also *C. & A. R. R. Co.*
v. *Shannon, Admr.*, 43 Ill. 343; *T., St. L. & K. C. R. R.
Co.* v. *Bailey*, 145 id. 159.                    o

The authorities sustain the position that evidence of gen-
eral reputation is admissible to prove the unfitness of a
fellow-servant, and ignorance of such general reputation on
the part of the master may of itself, where it is his imper-
ative duty to know the fitness of his servant, and where in-
quiry would have led to the knowledge, be such negligence
as to charge the master. The servant, upon entering the
employment, is held to assume the natural and ordinary
risks incident to the business in which he engages, and im-
pliedly contracts that the master shall not be liable for in-
juries consequent upon the negligence of a fellow-servant,
in the employment of whom the master has exercised due
and proper care. And it is the duty of the master to ex-
ercise ordinary and reasonable care in the employment and
selection of careful and skillful co-employés. What is the
exercise of such care has been the subject of much discus-
sion, and of some difference in adjudged cases. It may,
however, be confidently asserted that the great weight of

authority and, according to the best considered cases, ordinary care in the employment of servants require a degree of diligence and caution proportionate to the exigencies of the particular service. It is such care as a reasonably prudent person would exercise, in view of the consequences that might reasonably be expected to result if an incompetent, careless or reckless servant was employed for the particular duty. Where, therefore, a master employs a servant to engage in a business known to be hazardous, and where the proper and safe discharge of the duty requires a high degree of care, skill and diligence, the master will be held in the selection of the servant to the exercise of care reasonably commensurate with the perils and hazards likely to be encountered in the performance of the duty. And the master impliedly contracts with each servant entering his employ, that he has and will discharge that duty, and the servant may, without sufficient appearing to put him upon notice to the contrary, rely upon the due and reasonable performance of it by the master. Where the service in which the servant is employed is such as to endanger the life and persons of co-employés, upon the plainest principles of justice and good faith, the master, upon engaging such servant, should be required to make reasonable investigation into his character, skill and habits of life.

And it has been held with practical unanimity that a failure to make such reasonable investigation is negligence on the part of the master, and he is held liable for an injury to a co-employé, occasioned either by the negligence, incapacity or intemperance of such servant. Cases *supra; Columbus, etc., R. R. Co.* v. *Troesch*, 68 Ill. 545; *I. C. R. R. Co.* v. *Cox*, 21 id. 20; *Wabash Railway Co.* v. *McDaniels*, 107 U. S. 454; *U. P. Ry. Co.* v. *Young*, 19 Kans. 488.

It logically follows, that where an injury has occurred through the incompetency, recklessness, or unskillfulness

of a servant who was generally known and reputed to be unfit, reckless or unskillful, evidence of the fact that he was generally so reputed, is competent as tending to show that the master, by the exercise of that ordinary and reasonable care required in his employment, could and ought to have known of his unfitness, want of skill, or reckless habit.

It will be found, upon examination of the cases cited, and they are sustained by the clearest reasoning, that it is wholly unimportant whether the master, in fact, knew of the character and habit of the servant. As said by Cooley J., in *Davis* v. *D. & M. R. R. Co.*, *supra:* "The ignorance itself is negligence in a case in which any proper inquiry would have obtained the necessary information, and where the duty to inquire was plainly imperative." Citing *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 566.

It is said that the preponderance of the evidence fails to show the bad character of the servant in charge of the towing vessel. The answer is, that was a question of fact, the determination of which is by law committed to the trial and Appellate Courts. Those courts alone are judges of the weight and credibility of the evidence.

The effect of this evidence was attempted to be limited by the instruction marked "13," given at the instance of appellant, as favorably to it as could be demanded. The jury were told that, "in order to charge the defendant with the fact of said Cooley's bad reputation," (if they believed from the evidence it existed), "the jury must also believe from the evidence that such reputation must have been so open, notorious and well known, where he was running and operating said steamboat, as to make it the duty of said defendant, or its managers, to inquire into and ascertain the facts in regard to such reputation." More than this the defendant could not require.

It is, however, insisted, that the plaintiff is shown to have had the same opportunity to have known of the reck-

less habit of Cooley that defendant is charged with having, and that the failure to inform himself in respect thereof, was negligence so contributing to the injury that no recovery can be had. As already said, the plaintiff, upon entering the employment, had a right to assume that the defendant had discharged its legal duty in selecting his co-employés, and might act upon that assumption in the absence of anything putting him upon notice to the contrary. *Pullman Palace Car Co.* v. *Laack*, 143 Ill. 257. Whether there was evidence of facts sufficient to put him upon notice, and requiring him to quit the service or assume the extra hazard, was a question of fact, which, by the statute, we are precluded from investigating, and of which the judgment of the Appellate Court is conclusive.

The plaintiff denied all knowledge of the want of skill and care of the captain of the towing vessel, or of his reputation in that regard, and whether, under the circumstances shown, he was bound to take notice thereof, was, as before said, a question of fact.

It is insisted that the court erred in refusing the instruction asked by appellant, and marked 16. The instruction as asked is faulty in instituting a comparison of opportunities between the plaintiff and defendant, to become acquainted with and know the reputation of Cooley. The law undoubtedly is, that if the plaintiff knew, or by the exercise of reasonable care and diligence could know, the reputation of Cooley for carefulness and skillfulness in the management of his vessel, before and at the time of the injury, he was chargeable with notice of whatever that reputation was, and if such reputation was bad, should not have exposed himself to the consequences liable to result. The instruction wholly ignores the necessity for the exercise of reasonable care and diligence on the part of the plaintiff. By it the jury were required to balance the opportunities as between the plaintiff and defendant merely, without any guide as to when either party should be charge-

able with knowledge of the fact.   Nor is there anything in the other instructions asked or given that aids this instruction.   It was also faulty in not confining the knowledge to the general reputation of Cooley in the respect indicated. While, as we have seen, specific acts of recklessness, carelessness, or incompetency may, under the circumstances of the particular case, be competent as tending to show that the employer could and ought to have known of the character and habit of his servant, on the other hand, when the reputation of the servant is competent to be shown, it is the general reputation only.

In respect of other instructions refused, it may be said, that every principle, proper to be given, is covered by those given.   That the court was not bound to repeat instructions, is too familiar to require the citation of authority.

Twenty-nine requests for special findings were asked by appellant.   Eighteen of them were submitted to the jury, and eleven refused.   This is also insisted upon as error. Without extending this opinion by a separate consideration of each refused request, it may be said, that all that is important in them, that could have had any controlling effect upon the verdict, is fully covered by those submitted.   And if it was otherwise, they relate to evidentiary facts, and not to the finding of any ultimate or controlling fact.   We are of the opinion that there was no abuse of discretion by the trial court, in refusing the same.

It is lastly insisted, that the court erred in overruling the defendant's motion in arrest of judgment.   The particular point made is, as we understand it, that no count of the declaration charges the defendant with notice or knowledge prior to the time of the accident, that Captain Cooley was careless, reckless, incompetent, or unskillful, in the management and operation of his steam vessel.   As already seen, and as said by counsel, the first and third counts of the declaration, which proceed upon the theory that the defendant is liable for the negligence of Captain Cooley,

treating him as a vice-principal, are eliminated from consideration by the finding of the jury that the plaintiff and Cooley were fellow-servants. And the recovery, if sustained at all, must be predicated upon the second count. The charge there is, as already seen, that it was the duty of the defendant to employ a prudent and competent captain for said steam propeller, but that defendant disregarding its duty in that behalf employed said Cooley, "who was then and there an incompetent, imprudent, reckless, and unfit person for such position, which fact was then and there wholly unknown to the plaintiff," etc.; and that by reason, etc., the plaintiff, while in the exercise of due and ordinary care, etc., was injured. If it be conceded that an allegation of knowledge, on the part of the defendant, of the character and habit of the captain, or of the evidentiary facts charging it with such knowledge, was necessary in the declaration, the declaration is nevertheless good after verdict. "This objection is not, that that which is attempted to be stated is not a cause of action, but that a cause of action is defectively stated, and that can not be urged on motion in arrest of judgment." *Matson* v. *Swanson, et al.*, 131 Ill. 255, and authorities cited.

Finding no substantial error in this record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*