## Chicago, L. S. & E. Ry. Co. v. Christopher Hartmann.

1. EVIDENCE—*Of the Reputation of a Servant as Proof of Negligence.*—In a suit for personal injuries, in which it is charged that the master was guilty of negligence in employing and retaining a particular servant, evidence of the general reputation of the servant is competent.

2. NEGLIGENCE—*Finding in Regard to, Sustained.*—Whether a charge of negligence is sustained by the evidence is a question for the jury, and in this case the court thinks they were warranted in finding that the injury complained of resulted from a want of due care on the part of the defendant.

3. APPELLATE COURT PRACTICE—*Where the Sufficiency of the Evidence to Sustain Different Counts of a Declaration is Questioned.*— A court of appeal can not say under which count of a declaration a jury may have found their verdict, and where no improper evidence was admitted and one good count is proven, it is not necessary to decide whether the evidence was of a character to authorize a verdict under another count.

4. DAMAGES—*$2,500 Held Proper in a Personal Injury Case.*—The question of damages was fairly submitted to the jury under proper instructions, and this court can not say that the judgment of $2,500 was unreasonable or excessive.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed September 20, 1897.

E. PARMALEE PRENTICE and GARNSEY & KNOX, attorneys for appellant.

Incompetency of a servant can not be shown by evidence of reputation alone. Actual evidence that the servant complained of is incompetent must be produced, and then evidence of his reputation is admissible to fasten upon the master knowledge of his incompetency. Shearman & Redfield on Negligence, Sec. 192; Gier v. Los Angeles C. E. Ry. Co., 41 Pac. Rep. 22; Baulec v. New York & H. R. R. Co., 59 N. Y. 356; Davis v. Detroit & M. Ry. Co., 20 Mich. 105.

The evidence produced by the plaintiff does not show that Alexander's reputation was bad. It shows only some gossip

of four or five people. Gossip is not reputation. 1 Green-leaf on Evidence, Sec. 461; Rice on Evidence, 630; Jones on Evidence, Sec. 863; Am. & Eng. Ency. of Law, Vol. 3, 114.

The court erred in admitting the evidence of Kinney as to Alexander's reputation as an engineer, and also erred in refusing to strike out the testimony of this witness upon motion of defendant.

This is an error affecting the merits of the case. Reputation can only be testified to by one having knowledge of it, derived prior to the occurrence, "*ante motam litem.*" Am. & Eng. Enc. of Law, Vol. 3, 116, Tit. "Character;" Douglass v. Tousey, 2 Wend. 352; Reid v. Reid, 17 N. J. Eq. 101; Wroe v. The State, 20 O. St. 460; Wharton Cr. L., 5th Ed.; Sec. 635, Griffith v. State, 90 Ala. 583; Carter v. Commonwealth, 2 Va. Cases 169; State v. Johnson, 1 Winston L. (N. C.), 238.

E. Meers and J. W. Downey, attorneys for appellee.

Evidence of the general reputation of Alexander, the engineer, as to his manner of running and operating the switch engine, is competent. Western Stone Co. v. Whalen, 151 Ill. 472; 2 Thompson on Neg. 153; Wood on Master and Servant, Sec. 420; Shearman and Redfield on Neg., Sec. 223.

Mr. Presiding Justice Crabtree delivered the opinion of the Court.

This was an action on the case to recover damages for injuries alleged to have been sustained by appellee, in consequence of the negligence of appellant. There was a trial by jury and verdict in favor of appellee for $3,500. The court required a remittitur of $1,000, which, being entered, a motion for new trial was overruled and judgment rendered for $2,500. Appellant brings the case here by appeal.

The declaration contained three counts, the first charging, in substance, that appellant was negligent in failing to use due care to keep its track in proper and safe repair. The second charged negligence on the part of appellant in

employing, and retaining in its employment, the engineer, upon whose engine appellee was riding at the time he received the injury complained of; and the third count was a union of the other two.

Appellee was in the employment of appellant as a yard switchman, and had been in such employment for about a month before the accident, which occurred on October 6, 1894, at a point on the tracks of the Calumet & Blue Island Railway, a few hundred feet south of the inclosure forming the west mill yard of the Illinois Steel Company, in the city of Joliet. The business conducted at this point consisted in pushing loaded cars into the yards of the steel company, and in taking out such loaded and empty cars as it was desired to ship. At the point where the accident occurred there was what is termed a " three-throw switch;" that is, a switch where connection is made with three different tracks. This switch consisted of two rails, with switch-stand, bars, and connections for its proper operation. One of the three tracks connecting with this switch led up a steep incline to the top of some trestles, constituting what are designated in this case as the "tonnicas." The work which Hartman and the crew with which he was working at the time of his injury was engaged in, was pushing those loaded cars up on the tonnicas, and they had been employed in the same kind of work all the forenoon of that day. It appears that to push those loaded cars upon the tonnicas, it was necessary for the engine to get a good head of steam on before starting, and then the engineer must force his engine up as fast as he could, in order to mount the grade. In doing this work, the switch, where the accident happened, was passed over every time the engine went up on the tonnicas and came down again.

At the time of the injury the switching crew had started with some loaded cars to run them up on the tonnicas, appellee being on the foot-board at the forward end of the engine, and on the left side, McCanna, the switch boss or conductor, sitting in the middle or astride of the casting, and Wolf, the assistant yard master, sitting on the right

side of the beam of the engine. Just at the instant when the engine struck the three-throw switch, it left the track, running from thirty to sixty feet forward, when by reason of the elevation of the tracks it canted over to the left catching appellee's foot between the beam of the engine and the ground, causing the injuries complained of. Mc-Canna and Wolf succeeded in stepping off from the engine in safety.

There is a conflict in the evidence as to the rate of speed at which the engine was running at the time it left the track, the testimony of the various witnesses placing it all the way from eight to thirty miles per hour.

The only questions of law raised in the case are, that the court erred in admitting evidence concerning the reputation of the engineer as to competency, and also, that the court erred in refusing appellant's motion to direct a verdict in its favor.

As to the first point we think there was no error. The weight of authority seems to be in favor of the competency of such evidence, and our own Supreme Court have so held. Western Stone Company v. Whalen, 151 Ill. 472, and authorities there cited.

The determination of the second point must depend on the question of fact as to whether the charge of negligence under either count of the declaration was proved by a preponderance of the evidence.

This was a question for the jury, and we can not say their verdict is so clearly against the weight of the evidence as to impose upon us the duty of setting it aside. On the contrary, we think a preponderance of the evidence shows that one of the switch rails, at the point where the engine left the track, was in a battered and unsafe condition, and there is some evidence to the effect it had been in such condition for about a month prior to the accident to appellee. It is true that engines had run over this battered rail in safety many times prior to the occasion which resulted in injury to appellee, and it is also true that an official of the company inspected the track only two or three hours before the acci-

dent, but, according to his testimony, the rail was battered, and by the testimony of other witnesses it appears to have been in a dangerous condition for such a length of time, and was of such a character that appellant, in the exercise of reasonable care, should have known of, and remedied, the defect.   The accident happened at the point where the battered rail was in the switch; its condition sufficiently accounted for the engine leaving the track, and we think the jury were warranted in finding that the injury to appellee resulted from a want of due care on the part of appellant in endeavoring to keep its track in a reasonably safe condition.   To ascribe the accident to any other cause but the battered rail would be but to indulge in surmise or speculation.   There being sufficient evidence to go to the jury upon the question of appellant's negligence, we think the court did not err in refusing the motion to direct a verdict for appellant.

As we think there was evidence sufficient to warrant a recovery under the first count of the declaration, we do not deem it necessary to discuss the question, as to whether it was of a character to authorize a verdict under the second count.   We can not say under which count the jury may have found their verdict, but so long as there was no improper evidence admitted, and one good count is proven, that is sufficient to sustain the verdict and judgment thereon.   Complaint is made that the damages are excessive.   This question was fairly submitted to the jury under proper instructions.   They saw the appellee and his witnesses and heard them testify, and were in a better position to judge as to the amount of damages to which appellee was entitled than we are.   The trial court required a remittitur of $1,000, which was entered, and we can not say that the judgment of $2,500 was unreasonable or excessive.

No complaint whatever is made of the instructions, and finding no error in the record the judgment will be affirmed.

Mr. Justice Dibell took no part.