### John Joohs, Appellee, v. Culver Construction Company, Appellant.

MASTER AND SERVANT—*care required in selection of employes.* A master is not a warrantor or insurer of the competency of his servants. A servant upon entering the employ of his master is held to assume the natural and ordinary risks incident to the business in which he engages and impliedly contracts that the master shall not be liable for injuries consequent upon the negligence of a fellow-servant in the employment of whom the master has exercised ordinary care and prudence, that is, a degree of care and prudence proportionate to the exigencies of the particular service.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1907. Reversed and remanded. Opinion filed June 11, 1908.

HAMILTON, CATRON & SAMPSON, for appellant.

SHUTT, GRAHAM & GRAHAM, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

The declaration in this case alleges that on May 9, 1904, appellant, the Culver Construction Company, was operating, by its engineer, a steam hoisting crane for raising, lowering and moving large stones in erecting the post office building in Springfield, and that appellee was then engaged in setting stones in said building; that said stones were large and heavy and were hoisted on the wall by means of said crane operated by an engineer employed by appellant; that it was the duty of appellant to furnish a careful, competent and experienced engineer to operate said crane, and by means thereof to hoist stone and assist appellee in placing same; that appellant sent one Frank Stout whom appellee did not know as an engineer, and who had never theretofore operated said crane in connection with appellee's work; that appellee declined to set stone in connection with Stout as engineer, until appellant, through its foreman, stated that Stout was a capable, competent and safe man to operate said crane, and that relying on such statement appellee began setting stone on the wall in connection with said Stout, as engineer; that not regarding its duty to furnish a reasonably safe, capable and competent man to operate said crane, appellant negligently furnished an inexperienced, unsafe and incompetent man in the person of said Stout to perform said duty, and that such fact was well known to appellant, but unknown to appellee; that said Stout by means of the said crane hoisted a large stone weighing 2,000 pounds to the place where it was to be set in the wall by appellee, and that in properly handling the said stone it was necessary by use of shears to keep the stone suspended while appellee was preparing its bed or position; that while appellee was standing on a scaffold outside of said wall, ready to prepare the bed for said stone to

be set in, and while in the exercise of due care for his own safety, said Stout, because of his said inexperience, incapability and incompetency, suddenly jerked said stone by means of the crane, thereby causing the shears holding the stone to slip, throwing its weight on appellee so that the scaffold was broken and appellee was thrown eighteen feet to the ground, and the stone fell on him, injuring him, etc. To this declaration appellant pleaded not guilty and a trial by jury resulted in a verdict and judgment in favor of appellee for $3,000.

The crane in question was of the locomotive type operated by steam and weighed about forty tons. It was equipped with a thirty foot steel boom built to the frame, so that the whole frame necessarily moved on its base when the boom was slewed. The crane was provided with eleven levers to be used in controlling or operating its several functions. The tracks upon which the crane ran were laid between appellant's stone yard and the building then under construction, and the crane was used to carry stone which had been dressed and cut according to specifications, from the stone yard to the building and there hoisted to its proper position upon the wall to be set by the stone setters. At the time of the accident the walls had been constructed to a height of about eighteen feet and were ready to receive the bell course of stone thereon. Prior to the day of the accident the crane had been regularly operated for some months by Joseph Iles, but upon that day Frank Stout was detailed by appellant to operate it.

The evidence introduced on behalf of appellee tends to show that appellee, who was then employed by appellant as a stone cutter and setter, seeing that Stout was operating the crane said to Alfred Roberts, who was employed by appellant as a department foreman, that he (appellee) didn't care about setting stone with Stout acting as engineer of the crane, and that Roberts replied: "I don't blame you. Go and get your tools

and come down and cut stone.'' And that thereupon appellee and his helper cut stone in the yard until noon; that at about one o'clock in the afternoon Roberts told appellee that James S. Culver, the president of appellant corporation, had given directions for appellee to go back on the wall, and that Stout, the engineer, would be all right; that thereupon appellee went upon the west wall of the building and set some stones by hand, which Stout had theretofore hoisted on the wall; that later in the afternoon appellee was called upon by Culver to set a large stone weighing from 1,500 to 1,800 pounds on the south wall of the building; that the stone was then being hoisted up with the crane by means of grab hooks commonly called ''dogs,'' the steel points of which were inserted in notches cut in the ends of the stone; that when the stone was thus hoisted upon the wall it became necessary to remove the dogs, because the projection of the hooks prevented the end of the stone from being placed sufficiently near to the adjoining stone on the wall, and to substitute what are known as ''shears'' for the purpose of placing the stone in proper position in the wall; that the shears consist of a steel hook similar to the hook in the dogs, which is inserted in a notch in the side of the stone and a wooden block, usually covered with rubber, which is set against the opposite surface side of the stone; that appellee then directed Stout to take a strain or hoist on the tackle for the purpose of enabling the shears to firmly grasp and hold the stone; that the stone was then moved in approximately its proper position to be set in the wall on the mortar bed, and appellee directed Stout to ''hold,'' that is, to maintain the stone in its then position; that as thus situated the stone rested at one end upon a 2 x 4 wooden piece, and at the other end on a piece of wood about the thickness of a lath, and the face of the stone projected about ten inches beyond the wall; that appellee then went down on the scaffold about five feet below the top of the wall for the pur-

pose of observing whether the stone was placed in line and properly fitted the adjoining stone; that while he was so employed the boom of the crane was suddenly jerked from one or two feet towards the southwest, whereby the wooden block of the shears on the face of the stone, was caused to slip and the stone was thrown off the wall, causing the injury complained of.

The evidence introduced on behalf of appellant tends to show that at the time the stone fell appellee was engaged in improperly attempting to move the stone and set it in position by means of a steel pinch bar, and that in doing this work appellee improperly took a position on the scaffold immediately beneath the stone. This is denied by appellee.

It is well settled that a master is not a warrantor or insurer of the competency of his servants. A servant upon entering the employ of his master is held to assume the natural and ordinary risk incident to the business in which he engages, and impliedly contracts that the master shall not be liable for injuries consequent upon the negligence of a fellow-servant, in the employment of whom, the master has exercised ordinary care and prudence, that is, a degree of care and prudence proportionate to the exigencies of the particular service. "It is such care as a reasonably prudent person would exercise, in view of the consequences that might reasonably be expected to result if an incompetent, careless or reckless servant was employed for the particular duty. Where the service in which the servant is employed is such as to endanger the life and person of co-employes, upon the plainest principles of justice and good faith, the master, upon engaging such servant, should be required to make reasonable investigation into his character, skill and habits of life." Western Stone Company v. Whalen, 151 Ill. 472.

It was incumbent upon appellee in order to establish his right to a recovery, to show by a preponder-

ance of the evidence, that the servant employed by appellant to operate the crane was inexperienced, unsafe and incompetent, and that appellant had failed to exercise reasonable care and prudence in employing said servant to perform that duty.

The testimony of appellee, heretofore referred to, wherein he related a conversation with appellant's foreman, Roberts, relative to his disinclination to set stone while Stout acted as engineer constituted no substantive proof of Stout's incompetency, but was merely offered for the purpose of showing that appellee had then no knowledge of Stout's alleged incompetency.

The evidence in the record establishes beyond controversy that Stout, who, at the time in question was about thirty-three years of age, had, up to the time of his employment by appellant in 1902, an extensive experience as an engineer and machinist; that when eighteen years of age he ran a traction engine in threshing grain, and at the age of twenty-two worked on locomotive engines; that from that time until his employment by appellant, he operated hoisting engines at coal mines, and was engaged in general repair work as a machinist; that in 1896 he successfully passed an examination conducted by the State Board of Mine Examiners and received a certificate of competency as a hoisting engineer; that when he was employed by appellant he was highly recommended as a competent man to handle engines and machinery; that when he was first employed by appellant he was put to work firing the engine which operated the crane in question, and as a hooker, during the construction of the state arsenal; that he worked there in that capacity for six months and occasionally operated the crane as engineer, some times in hoisting and placing stone for the stone setters; that he was subsequently employed by the Chicago and Alton Ry. Co. as repairer at its roundhouse for two years; that he was then re-employed by appellant as a general machinist and en-

gineer, and when Iles left on Saturday preceding the Monday on which the accident occurred, he (Stout) had charge of all the engines of appellant, and because of his familiarity with it was selected to instruct the fireman, Erickson, how to operate the crane.

Several of his former employers and others, competent to judge, testified that Stout was a careful man and was thoroughly competent, intelligently and properly to operate the crane. It further appears from the evidence that any man ordinarily competent to run a stationary or locomotive engine could, after a few hours of instruction and practice, qualify himself to properly operate the crane. It is uncontroverted that Stout, prior to the accident had had more than six months' experience in working with the crane and had devoted the greater part of that time to qualifying himself to operate it, and to instruct other servants of appellant how to operate it. No witness testifies that Stout was incompetent to operate the crane, and the evidence offered by appellee as tending to show that fact is of little, if any, probative value.

Iles, whom Stout succeeded, testified that he saw Stout operating the crane on the day of the accident; that he operated it very slowly and carefully; that he could have run faster; that he saw him stop twice before he came up where he could hook to the boat and that a "competent man could probably have run the machine right up to what he was wanting to hook to without any stops, twice as fast as he was running."

Harry Reitzer, who operated the crane a year prior to the accident, and for whom Stout was then acting as fireman, testified that Stout was then in charge of the engine for three or four days; that he was operating the digger attachment, excavating for a foundation; that he couldn't hold the dirt in the bucket, but couldn't say that Stout failed to do anything else; that the bucket was hard to control some times and got out of line, and that he (Reitzer) had had the same experience.

It is uncontradicted that Stout was digging at that time in made ground, consisting of rubbish and dump from the street, which frequently prevented the points of the bucket from shutting so as to hold the dirt; that the crane was necessarily so situated with reference to the work that the operator was unable to see the bucket.

Peter Erickson, who was fireman for Stout on the day of the accident, testified that Stout was detailed to instruct him how to run the crane; that Stout was about as unfamiliar with the crane as he was, and did not appear to know which way the machine would go when he pushed the lever one way or the other; and that he saw Stout pull the wrong lever that day. These were merely the conclusions of the witness and he stated no facts which tended to support his conclusions.

John P. Thompson, one of appellee's helpers, testified that he saw Stout hoist a load of brick over the boom that day, by hoisting the fall too high. Stout testified that upon the occasion referred to by the witness Thompson, he hooked on to a box of brick and raised it to a place on the building where the wall cut off his view of the box, and that while the box was in that position he received an order to "hoist the fall," which he did, with the result that the box was pulled over the boom; that the proper order to have given under the circumstances was to "hoist the boom." There is no evidence corroborating Thompson's testimony in this particular.

Assuming that the boom slewed as testified to by the witnesses for appellee, there is no direct evidence in the record that Stout did anything to bring about that result. Stout testified that he did not move any lever after receiving the order to hold the boom; that he then operated a lever to move the boom is merely inferred from proof of the fact that Stout was in charge of the crane and the further fact that the boom

could not ordinarily be slewed unless the proper lever was moved.

We are constrained to the conclusion that the finding of the jury that appellant failed to exercise ordinary care in selecting and retaining Stout to operate the crane, and that Stout was incompetent to operate the same, is against the manifest weight of the evidence, and should, therefore, be set aside. Having arrived at the foregoing conclusion it is unnecessary to discuss and determine the other errors assigned.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*