## STARNE, DRESSER & COMPANY

### v.

## WILLIAM SCHLOTHANE.

21      97
d98   ¹486

*Injury to Laborer in Coal Mine—Co-Servants—Contributory Negligence.*

1. The engineer of a coal mine, whose duty it is to lower and raise the cages used in the operation of the mine, and a common laborer, whose duty it is to prepare the bottom of the shaft to receive the cages, are co-servants; and the owners of the mine are not liable for damages resulting to the latter through the negligence of the former.

2. In the case presented, upon a review of the facts, this court holds that a laborer so employed can not recover for injuries sustained in the course of his employment, especially as he appears to have contributed to

the negligence, if any, and although directed to continue at work by another servant of the owners.

[Opinion filed May 25, 1886.]

APPEAL from the Circuit Court of Sangamon County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. PATTON & HAMILTON, for appellants.

Wadsworth and appellee were fellow-servants, and appellants can not be held responsible for any act of either, affecting the safety of the other. C. & N. W. R. R. Co. v. Moranda, 93 Ill. 302; Same v. Same, 108 Ill. 576 ; C. & E. I. R. R. Co. v. Geary, 110 Ill. 383 ; Abend v. T. H. & I. R. R. Co., 111 Ill. 202.

There are a number of earlier cases in which the Supreme Court has held that no recovery could be had, because the person injured and the one whose negligence caused the injury were fellow-servants.

In Honner v. I. C. R. R. Co., 15 Ill. 500, the injury was caused by the negligence of co-servants in adjusting a turntable. In I. C. R. R. Co. v. Cox, 21 Ill. 23, the negligence of the conductor and engineer of a wood train caused the injury to a laborer on the train. The case of C. & A. R. R. Co. v. Keefe, 47 Ill. 108, is similar in its facts to the Cox case. In C. & A. R. R. Co. v. Murphy, 53 Ill. 336, a laborer was hurt through the negligence of the engineer of a switch-engine. In Gartland v. T., W. & W. R. R. Co., 67 Ill. 498, the injury was the result of the negligence of co-servants in moving cars. In St. L. & S. E. R. R. Co. v. Britz, 72 Ill. 256, the man injured was a shoveler employed on a construction train, who was hurt through the negligence of the engineer or brakeman. In I. C. R. R. Co. v. Keen, 72 Ill. 512, the plaintiff's intestate, who was a brakeman on a water train, was killed by the explosion of the boiler of the engine drawing the train, caused by the carelessness of the engineer. In T., W. & W. R. R. Co. v. Durkin, 76 Ill. 395, the death of plaintiff's intestate, who was a laborer on a gravel train, was caused by the negligence of the engineer of the train. In C. & A.

R. R. Co. v. Rush, 84 Ill. 571, the injured person was a brakeman, and the accident was, in part, the result of the carelessness of the engineer, who so suddenly started the train that Rush was thrown under it. In Valtez v. O. & M. R. R. Co., 85 Ill. 500, a car repairer at a station was injured by the negligence of the engineer of a switch engine.

A master is not liable for an injury sustained by one of his employes through the negligence of the foreman having charge and control of him and others, unless the foreman had power to discharge employes, or the master was negligent in employing him. Peterson v. Whitebreast Coal Co., 50 Iowa, 673; Keystone Bridge Co. v. Newberry, 96 Pa. St. 246; Lehigh Valley Coal Co. v. Jones, 5 Norris, 433; D. & H. Canal Co. v. Carroll, 8 Norris, 374.

When the service undertaken is extra hazardous, and the employe having knowledge of its character, continues in it, he can not maintain an action for injuries received while in the performance of the labor. Or if he discovers that the service has become more hazardous than usual, or than he anticipated, the rule is, he must quit the service or assume the extra risk to which he is exposed. The master is under no obligation to take more care of the servant than the servant is willing to observe for his own personal safety. I., B. & W. R. R. Co. v. Flanigan, 77 Ill. 365; Pennsylvania Co. v. Lynch, 90 Ill. 333; Missouri Furnace Co. v. Abend, 107 Ill. 44; Simmons v. C. & T. R. R. Co., 110 Ill. 340; Abend v. T. H. & I. R. R. Co., 111 Ill. 202.

Messrs. McClernand & Keys and N. M. Broadwell, for appellee.

The law holds appellants to the exercise of the highest degree of care and caution. But they were grossly negligent.

They permitted the cages to be lowered and hoisted without signal or warning of any kind. At the bottom of the shaft, where every few minutes one of the cages would land, there was no railing or other structure to protect the man from injury by the cage, who might come to the bottom of the shaft.

It was negligence on the part of the appellants to require the service of appellee of dipping the water from the pump when the cages were in operation. It was their duty to provide such means and appliances as would reasonably insure the employe against injury while engaged in his work. There was an easier and safer way of removing the water from the sump than by having the appellee dip the water therefrom, and that was by lifting the same by a pump.

Appellee was hurt because the cage suddenly and rapidly descended upon him without warning or signal of any kind; because the appellants required the particular service of appellee when the cages were in operation; because appellants did not provide proper means and appliances to protect appellee from injury while engaged in his work ; because the pump was out of repair and not working, and because appellants negligently permitted the steam to escape into the shaft at the bottom thereof, so as to prevent appellee from either seeing or hearing the approach of the cage.

Appellee and Wadsworth did not co-operate in the performance of their duties. The dipping of the water by appellee had no possible connection with Wadsworth · acting as superintendent or trackman.

Where a person in the employ of another is commanded by a fellow-servant, but to whom he is so subordinate that he is compelled to obey his direction, to do an act in the same general service and extra hazardous in its character, and in doing the same the servant so directed receives injuries, occasioned by the negligence of another servant employed in the particular line of service in which the act was being done, the common employer will be liable to the servant so injured. Lalor v. C., B. & Q. R. R. Co., 52 Ill. 401.

PLEASANTS, J. The declaration in this case sets forth that defendants, the appellants, owned a coal mine more than 200 feet below the surface of the earth, and operated the same through a shaft with heavy cages lowered and hoisted by steam power, and that plaintiff was employed at common labor about the bottom of said shaft. Four of the counts,

alike in substance, aver it was their duty so to manage said machinery and appliances, and let down said cages so slowly and cautiously as to prevent harm and injury to the plaintiff while engaged at such labor, and to give him warning of their descent, that he might move out of their way before they should reach him; and a fifth, that it was their duty to keep the shaftway clear of steam or other matter that would obstruct his vision, and prevent his seeing them; but that on the 20th of January, 1882, they let down a cage while the shaft was filled with steam, without warning him, and so swiftly and incautiously that while performing labor as aforesaid, with due care and caution, he was unable to see it descending or to escape from it, and was caught under it and thereby badly crushed and injured.

The trial resulted in a verdict for the plaintiff for $500 damages, which the court refused to set aside, and upon the entry of judgment thereon the defendants appealed.

It appears that the shaft was about 250 feet deep. Two cages lowered and hoisted by steam power from an engine thirty-five feet distant from it, were used to carry up and down men, coal, and whatever else went to or came from the mine. They were operated by a rope over pulleys, and as one came up the other went down. They were lowered even with the bottom of the pit so that the coal trucks could be pushed directly on and off them, and rested on timbers over a sump or sink in which water constantly accumulated. So much of this as was needed for the purpose, was bailed into barrels and supplied drink for the mules, of which there were fifteen being worked in the mine, and the rest was pumped out by steam power when the pipe was in order, and when not, was also bailed by hand with buckets into barrels, and hauled out of the way. It was necessary to do this in order to get the cars on and off the cage, to and from the tracks. If it overflowed, it would be difficult to let down or raise the cage or adjust it to the tracks. At the time of the accident the pipe was out of order so that the pump could not be used.

Among those employed below was a cager, Cooper, who

had charge of the cages at the bottom—pushed the loaded cars on and the empties off. He had communication with the engineer above by means of a wire attached to a bell in the engine house, and indicated to him by the number of bells when to lower, when to hoist, when to lower slowly, and when to let the cage stand. The engineer was not to move a cage without his signal. This, however, was an arrangement between them alone. Nor was it observed except when they were raising coal. Before doing that, of course, the men who worked below, including the cager himself, had to be let down, and this was done without warning to those already down, except at times, by hallooing from the landing at the surface or from the cage as it descended.

But no signal was required to be given, nor was any system used to warn persons at the bottom, of its approach. They depended on seeing or hearing it. No coal was raised in the morning before the accident in question occurred, which was between eight and ten o'clock. They had been repairing the boiler and were late in getting up steam.

There was also a roadman, Wadsworth, whose special duty it was to lay and take care of the tracks in the mine and the pit cars, and to timber and to wall under the driveway—in general, to see to the facilities for getting the coal from the rooms to the bottom of the shaft. But in the absence of Hahn, who was superintendent and immediate director of the work and men above and below, he took some general charge, in fact, of the work and men in the pit. He did not hire nor discharge anybody and had no authority whatever.

He was sometimes called the pit boss by some of the men, but there was no pit boss, because Hahn was generally within call, and all the men were alike subject, immediately, to his orders. Wadsworth never had anything to do with signaling the engineer.

Appellee was employed to take care of the mules and as a common laborer to help anybody in anything he could do, as he should be called on. It was a part of his duty to bail out the sump when necessary, though others sometimes did it without him and at others assisted him in doing it. On the

Starne, Dresser & Co. v. Schlothane.

morning of the accident he was so engaged for about two hours before they got up steam. He says as soon as they did get it up, they turned it into the shaft for ventilation as he supposed, though he had never known it to be done before. He continued at this work a little while after, and until the north cage, which had been resting on the bottom, was pulled up, when he left. Wadsworth coming up, asked why he had stopped dipping. He replied because they had just taken that cage away. Wadsworth then said, "You needn't be afraid they will let the cage on you, I want you to hurry up and get that water out," and passed on. Appellee waited a few minutes and then, everything appearing quiet in the shaft, resumed the work and continued at it some ten or fifteen minutes, when the south cage came down upon and crushed him.

Just at that time the shaft was so full of steam he could not see it coming, and the hissing was so loud he could not hear it. No signal had been given. The cager, who was assisting him by taking the buckets as he handed them up and emptying them into the barrel, saw it just before it struck him, and rang the bell several times and then hallooed, but the lowering was not stopped nor was the cage lifted off him by the engine. The men pried it off and took him out.

It does not appear that either of the appellants was about the premises that morning, or that Hahn, though present above, directly or indirectly gave an order to appellee about dipping, or to the engineer about letting steam into the shaft, or lowering the cage. Nor did Wadsworth, further than has been stated. Camp, the engineer then in charge, died before the commencement of the suit.

The foregoing is believed to be a full and fair statement of appellants' case upon the evidence. There is no controversy as to these facts, excepting the authority of Wadsworth over him. He and some other witnesses say he was under his direction as pit boss. Wadsworth and others deny it.

On the whole we think he was no more under Wadsworth's direction than of any other employe whom he assisted for the time being.

But however that may be, we are of opinion the verdict was against the law. Upon the facts shown, including the

assumption of Wadsworth's authority, appellants are not liable for the injury. The only acts of negligence charged are the manner of letting down the cage and the letting of steam into the shaft. These were acts of the engineer, without special direction from appellants, and he was a fellow-servant of appellee. The employment of the one was to prepare the bottom of the shaft to receive the cage, and of the other to lower the cage upon the bottom so prepared. They habitually co-operated to the same particular end.

Nor is it clear that the engineer was in fault. It was not incumbent upon him at his engine to give the men below any special warning of the descent of the cage. The ascent of the other was notice of its imminence, and its descent could be seen or heard by ordinary care to observe, which was the duty of those working where they were liable to be injured by it. If the steam in the shaft was unusual and hindered, it was there for a proper and important purpose, according to appellee. It gave ample notice of its presence. Its effect upon the senses of sight and hearing were clearly apparent, and imposed a greater degree of watchfulness on the part of those who were exposed, to avoid injury. What duty, then, did the engineer disregard?

Appellee saw the danger and spoke of it. For that reason he quit the work and did not immediately obey the direction to resume it. He knew that Wadsworth's expression was but an opinion, that he had nothing to do with signaling the engineer, and that the cager, his assistant at the time, could signal him; and with this knowledge he voluntarily took the risk, which yet involved no negligence of the engineer.

His right to recover is not put upon the ground of Wadsworth's statement and direction. That is expressly disclaimed in the argument. If it were and Wadsworth had authority to direct him, he did not direct him to do anything out of the line of his employment, and therefore the case of Lalor v. C., B. & Q. R. R. Co., 52 Ill. 401, is not in point.

For these reasons the verdict ought to have been set aside, and for the error in refusing to do it the judgment will be reversed and the cause remanded.

*Reversed and remanded.*