## Consolidated Coal Co. of St. Louis v. Frank Seniger.

1. MASTER AND SERVANT—*The Master Can Not Escape Liability by Leasing His Works.*—A mining company can not escape liability for injuries to employes by simply placing the management of its mines in charge of a person under a written contract, in which such person is called a lessee.

2. FELLOW-SERVANTS—*Hoisting Engineer and Miners—Master's Liability.*—A hoisting engineer in a coal mine, and a miner employed in such mine, are fellow-servants, and the common employer can not be held liable for the negligent management of the engine by the engineer unless he is incompetent, and the employer is guilty of negligence in retaining him after notice of such incompetency.

3. SAME—*Liability of the Common Master—Evidence.*—Wherever it is sought to fasten liability upon the common master for an injury resulting from the incompetency of a fellow-servant, the prior acts and conduct of such servant on specific occasions may be given in evidence with proof that the master had notice of such acts.

4. MINES AND MINING—*Competency of Hoisting Engineer—Certificate Not Conclusive.*—A certificate of a hoisting engineer obtained under the act of 1895, entitled "An act to provide for the examination of fire bosses and hoisting engineers at all coal mines in this State where such services are necessary, and to regulate their employment," goes no further than to say that the bearer at the time of issuing it had the technical knowledge and skill, coupled with the physical ability to properly and safely run the engine, and is *prima facie* evidence of such competency only.

5. SAME — *Retention of Incompetent Hoisting Engineer.*—If the employer ascertains, either from personal observation or the report of others, that the holder of a certificate is not, in fact, competent, and retains him in service, he would be liable for all injuries to other employes resulting from such incompetency.

6. SAME —*In What Incompetency Consists.*—While the technical knowledge and physical ability of the engineer may be sufficient to stand the test of an examination, a reckless disposition may render the person utterly unfit to operate the machinery placed in his control. Incompetency exists not alone in physical and mental attributes, but

also in the disposition with which a servant performs his duty. If, instead of being watchful, he becomes inattentive and habitually neglects his duties, he becomes unreliable, and although possessing the mental and physical ability to do his work, his disposition toward the general safety of his fellow-servants renders him incompetent.

7.  WITNESSES —*Right of Cross-examination.*—A witness may be interrogated by the party as to his previous statements for the purpose of probing his conscience and moving him to relent and speak the truth. If he denies the contradictory statements, after his attention has been called to the time and place of making them, such statements may be shown by other witnesses for the purpose of setting the party right before the jury.

Trespass on the Case, for personal injuries. Trial in the Circuit Court of Macoupin County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the May term, 1898. Affirmed. Opinion filed December 2, 1898.

CHARLES W. THOMAS and FRANK W. BURTON, attorneys for appellant.

ZINK & KINDER, attorneys for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

This is an appeal from a judgment of $3,000, recovered by appellee for injuries sustained by him as an employe in appellant's coal mine.

Appellant owns a coal mine at Staunton, Illinois, operated by a shaft 305 feet deep. On the 14th day of May, 1897, while appellee and seven other men were being lowered into the mine, the cage in which they were being conveyed fell from near the middle of the shaft to the bottom with such force that the right leg of appellee was broken in two places, and his left leg, hip and back were seriously injured. The declaration contains three counts. The first charges that the injury was occasioned by the negligent failure of appellant to provide a sufficient brake on the drum used in lowering the cage into the mine. The second charges that it was due to the incompetency, inexperience and intemperance of an engineer whom appellant had negligently placed in charge of the engine by which the cage was operated.

The third charges generally that it was on account of the willful failure of appellant to provide safe means for lowering appellee into the shaft. To the declaration the general issue was filed and a trial by jury was had, resulting in a verdict and a judgment for the amount above mentioned.

In seeking a reversal of the judgment it is urged by appellant:

First, that the mine, at the time of the injury, was not in the possession of appellant, but was operated by one F. E. Weisenborn, under a lease from it; second, that the trial court erred in admitting testimony relating to the competency of the engineer, the condition of the engine, and statements which had been made by appellant's general manager and superintendent concerning the company's responsibility to employes receiving injuries in the mine; third, that appellant was seriously prejudiced by the action of the court in allowing appellee to discredit the testimony of his own witness, J. D. Rasor, the hoisting engineer; fourth, that neither the general verdict nor the special findings are supported by the evidence.

It was contended upon the trial that the mine was being operated at the time of the injury by Weisenborn under a lease from appellant, and that he alone was responsible for injuries to employes caused by an improper management of it. While it did appear that a written lease existed, and that Weisenborn had full control of the men employed, and the active operation of the mine, there was evidence sufficient to support the contention of appellee that appellant was really operating the mine in the name of Weisenborn. A mining company can not escape liability for injuries to employes by simply placing the management of its mine in charge of a person under a written contract in which he is termed a lessee. So far as the rights of third parties were concerned appellant was the owner and operator of the mine, and as such was responsible to employes for injuries occasioned by wrongful and negligent management of it. In this connection we desire to say that no error was committed by the trial court in admitting testimony of state-

ments of J. C. Simpson, appellant's general manager, and J. P. Hehenstreit, appellant's superintendent on the Wabash Division, to the effect that appellant would be responsible for injuries to employes working in the mine under Weisenborn. Such testimony was proper for the jury in determining whether the so-called lease was feigned or executed in good faith.

Rasor, the hoisting engineer, was a fellow-servant with appellee, and if the injury was due to his negligent management of the machine appellant could not be held liable, of course, unless Rasor was incompetent and appellant was guilty of negligence in retaining him. Under the second count of the declaration, therefore, the competency of Rasor and the negligence of appellant in retaining him were the important questions for the determination of the jury. Over the objection of appellant the court permitted proof of prior acts of the engineer in the management of this particular machine as tending to show his incompetency. Authorities from other States are cited in support of the contention that where the competency of one engaged in an employment requiring the exercise of particular skill is the matter of inquiry, proof of former acts of such person are not proper. They are not in harmony with the rule as announced by the great majority of courts of last resort in this country, however, nor in harmony with the views of our own Supreme Court. In Western Stone Company v. Whalen, 151 Ill. 472, the learned judge delivering the opinion says : " That proof of such specific acts is competent seems to be well settled. Wherever it is sought to fasten liability upon a common master for an injury resulting from the incompetency of a fellow-servant, the prior acts and conduct of such servant on specific occasions may be given in evidence with proof that the master had notice of such acts. Indeed, we regard such proof as more satisfactory than proof of general reputation for incompetency."

The most important question in this case, relates to the force and effect of a certificate of competency obtained under the act of 1895, entitled " An act to provide for the

examination of fire bosses and hoisting engineers at all coal mines in this State where such services are necessary, and to regulate their employment." That act makes it unlawful for any one to assume the duties of a hoisting engineer at any coal mine in the State without first obtaining a certificate of qualification for the position from the State Board of Mine Examiners; and mine owners and operators are prohibited from employing any person as hoisting engineer who has not such a certificate. It is vigorously urged by counsel that by this law the State has assumed entire control of the function of ascertaining the competency of hoisting engineers, and that in any particular case where the proper officials have acted and determined the question of competency their action is final and conclusive, and, so long as the engineer holds his certificate and has mental and bodily health, his competency can not be inquired into.

We think the only effect of this act, as applied to the common law rule casting upon the employer of skilled labor the duty of inquiring into the competency of an employe, was to relieve him from inquiring into the matter of competency in the first instance. The certificate goes no further than to say that the bearer at the time of issuing it had the technical knowledge and skill, coupled with the physical ability to properly and safely run the engine. It is but *prima facie* evidence of competency. If the employer should afterward ascertain, either from personal observation or the report of others, that the holder of the certificate was not competent and should continue to retain him in service, he would be liable for all injuries to other employes resulting from such incompetency. While his technical knowledge and physical ability may be sufficient to stand the test of an examination, a reckless disposition may render him utterly unfit to operate the machinery placed in his control. Incompetency exists not alone in physical and mental attributes, but also in the disposition with which a servant performs his duty. If, instead of being watchful, he becomes inattentive and habitually neglects his duties, he becomes unreliable, and although possessing the mental

and physical ability to do well the work assigned him his disposition toward the general safety of his fellow-servants renders him an incompetent man. Coppins v. N. Y. C. & H. R. R. R. Co., 122 N. Y. 557.

It is insisted that no proof contradicting the *prima facie* evidence of competency, as furnished by the certificate, could be heard without an averment in the declaration that Rasor had a certificate and was once competent but had become incompetent, and that appellant knew it. The declaration does not charge that appellant was willfully negligent in employing a man as hoisting engineer who at the time of the employment was incompetent, but in placing in control of the hoisting machine a man who was incompetent on the 14th day of May, 1899, the day of the injury. The proper inquiry, therefore, was the competency of Rasor at the time of the injury.

The record shows that Weisenborn had actual notice of the reckless manner in which Rasor operated the hoisting machine. Complaints were made to him by the men on different occasions. The relations between Weisenborn and appellant were such that notice to him was notice to appellant. The injury was caused by the improper manner in which Rasor operated the machine. He was incompetent, and appellant, having notice of his incompetency, continued him in service. In our opinion the record shows a case against appellant independent of the proof relating to defective machinery. We do not care to go into a discussion of the testimony relative to the alleged defects in the engine. We will say, however, that we have been unable to discover any error in the rulings of the court upon the admission of testimony on that branch of the case.

It is apparent that Rasor was an unwilling witness for appellee. His attitude was that of a hostile witness. We do not think the court exceeded the bounds of proper discretion in allowing appellee's attorney to cross-examine him in his efforts to " rasp the conscience and probe the recollection " of the witness. Wherever the testimony of a party's own witness is different from that of statements made before

the trial which have induced his introduction as a witness and the party has been taken by surprise, the witness may be interrogated by the party as to his previous statements for the purpose of probing his conscience and moving him to relent and speak the truth. If the witness denies the contradictory statements, after his attention being called to the time and place of making them, then they may be shown by other witnesses, not for the purpose of impeachment but for purpose of setting the party right before the jury. National Syrup Co. v. Carlson, 42 Ill. App. 178.

The instructions to the jury are in harmony with our view of the law of the case. We see no sufficient grounds for disturbing the finding, and the judgment will be affirmed.