98    483
a195s  630

## Joseph J. Duffy et al. v. Maurice Kivilin.

1. NEGLIGENCE—*When a Question of Fact.*—The question as to whether "a hoist" in a perpendicular shaft was negligently and improperly caused to be started with a sudden and violent jerk is a question of fact for the jury.

2. SAME—*When a Question of Law.*—Where the evidence or the undisputed facts establish beyond question that the relation of fellow-servants exists between the person injured and his co-employe by whom the injury is caused, the question of negligence becomes one of law.

3. PLEADING—*Negative Allegations as to Fellow-servants Not Necessary.*—In an action for personal injuries caused by the act of a co-employe, it is not necessary to allege in the declaration that the co-employe whose negligent act caused the injury was not a fellow-servant of the plaintiff.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed November 26, 1901.

O. W. DYNES, attorney for appellants.

THEODORE G. CASE, attorney for appellee; A. W. BROWNE, of counsel.

MR. JUSTICE SHEPARD delivered the opinion of the court.

A verdict of $7,500 was returned in favor of appellee in a suit brought by him against · appellants for negligence, from which $2,500 was remitted and judgment entered for the balance.

The substantial facts out of which the cause of action arose were not disputed.

Appellee was a mule driver and his principal work was driving a mule hauling clay in a tunnel that was being constructed about 110 feet below the surface of the ground. The tunnel extended from the bottom of a vertical shaft that led to the surface. It was appellee's duty to haul the clay, after it had been loaded on small cars, to the bottom of the shaft, where the car was received by "cagers" there stationed, and by them run upon the platform of the

cage and there hoisted by means of steam power to the surface. The hoisting apparatus was in charge of an engineer stationed on the surface, about ten or twelve feet from the top of the shaft. Besides driving the mule in the tunnel, appellee performed errands for the other men who worked in the tunnel, and it was thus a part of his duty to go to the surface occasionally to get supplies, such as candles, oil, etc., and to do that he would ride up the shaft on the hoist, and on one of these occasions the accident happened. The platform of the cage was provided with rails onto which the car was run by the " cagers." In these rails indentations were made about half an inch deep, of about the size of the car-wheels, into which the wheels would settle and thus become what is called "locked." The object of "locking" the wheels was to prevent the cars from running backward or forward on the platform during the time they were being hoisted. This method of locking trucks on the hoist platforms was shown to be the usual and common method of doing it. Appellee had nothing to do with placing the car on the platform. This work was done by the " cager " at that end of the shaft.

On the occasion in question, the appellee wanted to go to the surface on an errand for the men, and he started to ride up on the platform, on which was an empty car. After he got aboard, the " cager" asked if he was ready, and receiving an affirmative answer, signaled the engineer to start. The platform was a small one and appellee testified there was not room for him to stand in safety by the side of the car, and he therefore got on top of the car, and held on to the iron railings of the hoist.

After the cage had ascended about twenty feet the cage tipped and the car rolled out of the lock or indentation, carrying the appellee with it, and precipitated itself and appellee to the bottom.

The appellants say in their brief:

" The principal disputed questions upon which evidence was introduced, were whether or not Spellman, the engineer, so operated the hoist as to cause it to give an unusual

Duffy v. Kivilin.

jerk and dislodge the car wheels from the locks on the rails; and whether or not Kivilin was in the exercise of due care in attempting to ride to the surface by standing up in the box of the empty truck or car instead of standing down on the platform of the hoistway at one side of the car."

The testimony of appellee in relation to the movement of the hoist after he got aboard was that it gave "a sudden jerk and up we went." The engineer, testifying for the appellants, said he was not aware of giving any unusual movement to the hoisting apparatus, although he did say that he could tell as soon as he started whether there was a load on, and if there was not, he would start up fast. The "cager," who gave the signal to the engineer to start up, was not able to say, in testifying, that he saw the hoist start. No other witnesses testified as to the movement of the hoist just before or at the time of the accident.

Under such testimony it was for the jury to say whether or not the hoist was negligently, carelessly and improperly caused to be started with a sudden, quick and violent jerk, as charged in one of the counts of the declaration.

With reference to the point that appellee was not in the exercise of due care in riding, standing up, in the box of the empty car, instead of standing at one side of the car, and between it and the side of the cage, the appellee testified that there was not room for him to stand at the side of the car. On the other hand it was shown that there was a space of a foot or more between the car and the side of the hoist, in which appellee might have stood if he had chosen to do so, and another witness testified that he had seen appellee riding up on the platform, standing by the side of the car, on other occasions. Which was the safe place for him, or whether he was bound to always choose the safest place in which to stand, and whether in placing himself in the position he was in, was an exercise by him of due care for his own safety, was a question for the jury. Nor was it prejudicial error by the court to permit the testimony of appellee, as above, to stand. It was the statement of a fact whether there was room or not, at the side of the car, for appellee to stand.

The principal objection urged against the judgment is that Kivilin, and Spellman, the engineer, by whom the hoisting apparatus was operated, were fellow-servants.

There is no allegation and no proof that appellants had any notice of Spellman's incompetency or carelessness. He had operated the apparatus for several months without any fault being found with him. But it is insisted by appellants that the character of the employment and work of the two men made them fellow-servants as a matter of law; and the cases of Starne v. Schlothane, 21 Ill. App. 97, and Consolidated Coal Co. v. Seniger, 79 Ill. App. 456, are relied upon especially by appellants.

The rule that if the evidence, or the undisputed facts, establish beyond question that the relation of fellow-servants exists between the person injured and his co-employe by whom the injury is caused, the question becomes one of law and will not be controverted.

But here, we think, such can not be said to be the case. The engineer was stationed at the surface end of the shaft, or near it, and from there operated the engine that lifted and lowered the hoist, as the case might be. He started the machinery in response to signals given him by the upper and lower "cage men."

In response to a question put by the attorney for appellants, the engineer testified :

" Q. You must—and you always in performing your work, looked at the cage to see whether the car was right to load, ready or not, before moving ? A. No, sir; that was not my work; there was a cage man there, McCarroll, who looked after that."

This had reference to the upper " cage man." Substantially the same duties were performed by the lower " cage man," at the lower end of the shaft, where appellee mostly worked as mule driver. The appellee testified as to whether it was his duty or a part of his work to put the cars on the platform, that it was not; " I had nothing to do with it." And again as to whether he or the lower " cage man " placed the car in position in the indentations which " locked " it on the platform, he testified that he did not,

that it " was not my business," and he was corroborated in such respect by the lower "cage man " in his testimony.

From this evidence we can not say that the evidence was so plain that appellee and the engineer were fellow-servants, as to make their relationship one of law for the court.

It was not necessary for the declaration to allege that the servant whose negligent act caused the injury to appellee was not a fellow-servant of appellee. Cribben v. Callaghan, 156 Ill. 549.

No instructions were offered by the appellee, and no objection to the size of the verdict is made.

We will therefore affirm the judgment, and it is so ordered.