William Lowry, Appellee, v. Chicago & North Western Railway Company, Appellant.

**Gen. No. 32,043.**

Opinion filed April 3, 1928. Rehearing denied April 17, 1928.

NELSON J. WILCOX and I. C. BELDEN, for appellant.

JOSEPH D. RYAN, for appellee; STUART B. KROHN, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This is an appeal from a judgment for $24,000 in an action to recover for personal injuries received by plaintiff from being "run upon, against or over" by one of defendant's freight cars while in a switching movement on a side track or so-called coal track, which led into a coal storage yard in the city of DeKalb.

The declaration contains four counts. As the first differs from the third, and the second from the fourth, only in respect of an averment that the movement was in interstate commerce—a feature not affecting the questions before us—we shall refer to the cause of action as differentiated in the first and second counts only.

The first is predicated on defendant's alleged negligence in moving the cars "after it knew, or should have known that the plaintiff was in a dangerous or perilous position in the event the said cars should be started or moved," plaintiff being, as alleged in said count in the yard on the side track close to defendant's coal cars. The second count is predicated upon negligence in starting and moving the cars without notice or warning "backward in an easterly direction toward, upon and across" a certain driveway "and toward the place where the plaintiff was standing," it being alleged that he was then "near to and upon the said

sidetrack, aforesaid, at or near a much used and traveled driveway.''

It is alleged and was shown that plaintiff prior to the accident on the day in question, and on the previous day, was employed in unloading coal cars on said side track in said yard, not as a servant of defendant but as an employee of a private concern using said yard. The yard was immediately east of the driveway and south of Oak street, which runs east and west. Running from the north to Oak street is Eighth street. The driveway would be a continuation of that street if extended south. The side track runs easterly across said driveway into said yard. West of the driveway about six feet south of the track is a coal shed about 180 feet long, the east end of which is somewhere between 12 and 30 feet west of the driveway. Two of the cars loaded with coal, alleged to have been negligently started or moved, stood by this shed, the most easterly being about a half or three quarters of a car length (20 to 30 feet) west from said driveway. Four other loaded cars were pushed up by the engine from the west and coupled onto these two cars, and the movement continued at the rate of about a mile an hour until three of the cars had crossed the driveway into the yard.

Plaintiff had worked in the coal yard during the early part of the forenoon, when on account of rain the work had been suspended, and it was not again resumed that day, though there was an apparent understanding it might be if it stopped raining. After quitting work plaintiff went to his home about a mile west, where after getting dry clothing he started back, going about the distance of two blocks north and then turning east. That was the last he was seen before he was found, about half an hour later, underneath the car in question after the movement had stopped at a point about three car lengths east of the driveway. The

greater weight of the evidence is that it was then raining and had been intermittently up to that time.

Just where plaintiff was at the precise time of the collision or his being struck, or how he got there, or from what direction he came, was not shown, save by his alleged admissions. The only two persons besides plaintiff shown to have been at the scene of the accident were the conductor and brakeman engaged in said movement. They testified as to the slowness of the movement, the ringing of the engine bell, that no one was on the track, and that the conductor stood on top of and at the east end of the loaded car that was backed up against and coupled onto the two standing cars. From that position the conductor testified that he had a clear view of the track east of the standing cars; that he could see the crossing over the ends of the two cars; that no one was there or in sight or approaching; that he could see to the north and someways south of the crossing, and was looking towards the same during the movement. Their testimony is the only direct testimony respecting the movement of the cars and surrounding circumstances at the time.

Defendant called four witnesses, two doctors, a nurse, and plaintiff's employer, who testified that after the accident, while plaintiff was in the hospital on the operating table, a short time before he underwent an operation for the amputation of one of his legs, he said that he got under the car to get out of the rain and then the car moved and he was injured. There was no contradiction of this testimony (except by plaintiff whose testimony was afterwards stricken as hereinafter stated). To rebut it plaintiff relied upon cross-examination of said witnesses, mainly as to plaintiff's condition at the time the statement was made. Each stated, however, that plaintiff was conscious or apparently understood what he was talking about, and we do not think the jury were justified in treating it as incredible, as they must have done, in the absence of

any impeaching testimony, or evidence legitimately tending to show its improbability.

Plaintiff was called to testify in his own behalf. In the course of his cross-examination he refused for some reason to answer further questions, whereupon defendant moved that his entire testimony be stricken. The ruling was reserved to the close of the case when the motion was granted on the court's holding that defendant had been deprived of its right to a full and complete cross-examination.

Before the testimony was stricken and after defendant rested, plaintiff's counsel called a physician who was permitted, over objection, to give his opinion of plaintiff's mental status at the time of the trial as determined from his examination of plaintiff after he had so testified. He defined it as "psychasthenia," meaning, he said, "a kind of mental exhaustion or mental bankruptcy" that corresponds to the physical condition known as neurasthenia. He testified that plaintiff seemed quite clear in answering his questions in the morning but before he got through "he apparently was confused and apparently asked me to give him a rest." Such evidence had no tendency to rebut any evidence offered by defendant and was objectionable on that ground. Its only relevancy was manifestly to account for plaintiff's conduct on the witness stand or his failure or refusal to submit to a full cross-examination. Having no other relevancy it should have been stricken along with plaintiff's evidence to which it alone pertained, though no motion was made to strike it. We think it was error to receive such medical opinion. It not only was not rebuttal evidence, but its consideration by the jury may well have involved their discussion and consideration of plaintiff's evidence.

The striking of plaintiff's own testimony left plaintiff without any direct proof of the exercise of ordinary care by plaintiff for his own safety, and none

from which it was legitimately inferable? To meet the necessity of such proof his counsel was permitted, over objection, to introduce evidence of plaintiff's habits in exercising such care. While such testimony has been held admissible where the victim of the accident was dead or insane, and so unable to testify, and there was no other eyewitness to the accident, no authority has been cited recognizing the admissibility of such testimony where the victim was alive and not proven to be insane. Assuming, for the sake of argument, that the medical testimony so offered to explain plaintiff's conduct on the witness stand might have been admissible to explain his inability to testify had he not taken the witness stand, and that in such a case proof of his habits of care would have been admissible, and assuming further that the conductor and brakeman could not, under the circumstances, be deemed eyewitnesses of the accident, nevertheless said medical testimony having been erroneously received it was also error to receive proof of plaintiff's habits of care, it having no other basis than improper and prejudicial testimony, under the circumstances, of plaintiff's mental status.

In view of this conclusion it is hardly necessary to discuss the theory of liability and the proof adduced to support it, and whether, as contended by defendant, the verdict was manifestly against the weight of the evidence. But it is clear that if plaintiff's admissions, which we cannot say were impeached or incredible, be accepted, he was a trespasser. The theory of the case, however, is that he was lawfully in the place where he was struck. The first count is predicated upon the theory that he was in the yard on or near the track. There was no direct proof to support that theory. He was not working then and had no occasion to be there on the track unless walking on it to his place of work when he would have been seen by the conductor. Unless he was walking with his back to the train he would have seen the train, and if crossing the track he cer-

tainly should have seen it and been able to get out of its way moving at the rate of a mile an hour, starting up as it did 20 feet away from him.

The theory of the second count is that he was at or near the driveway and it was apparently plaintiff's theory, as indicated by the argument here, that when he was struck he was on the driveway in a place where he might lawfully be. The count does not expressly state that he was on the driveway, but that he was "at or near the driveway" and that the cars were moved "upon and *across* the said driveway aforesaid and *toward the place where the plaintiff was standing.*" The allegations of this count are somewhat obscure with respect to where he was standing. In fact there was no proof that he was standing when hit. As to where he was plaintiff relied entirely upon circumstantial evidence, namely, proof indicating that an object had been dragged in the coal dust between the tracks from the east point of the driveway to where the most easterly car was stopped and to where the body was found tangled in its easterly axle, and that a cap (not shown to be plaintiff's) was found at or near said driveway after the accident. We do not regard such circumstantial evidence as outweighing the direct unimpeached testimony of the conductor to the effect that he had a clear view of the track and crossing, was looking towards it, and saw no one on the same or approaching it at the time of the movement, and the uncontradicted admissions of plaintiff that he was under the car at the time of the accident. Such circumstantial evidence is not inconsistent with such admissions.

We think the erroneous admission in evidence of the physician's opinion and the evidence as to plaintiff's habits, if not the prejudicial circumstances above stated, require a reversal of the judgment and a remanding of the cause for a new trial when plaintiff may have a new opportunity to testify in his own behalf.

We are not prepared to say there should have been an arrest of judgment or a directed verdict for defendant, as asked. It would be more in keeping with justice to permit such opportunity in view of the unusual circumstances that would have justified withdrawal of a juror.

*Reversed and remanded.*

GRIDLEY and SCANLAN, JJ., concur.