Lee Hildebrand, Plaintiff-Appellee, v. The Baltimore and Ohio Railroad Company, Defendant-Appellant.

Gen. No. 63–F–17.

Fourth District.

May 10, 1963.

Costello, Wiechert, and Robert & Gundlach, of East St. Louis (John C. Roberts, Edw. W. Stubbs, Jr., Richard Allen, and Kenneth H. Ekin, of counsel), for appellant.

James A. Dooley, of Chicago, for appellee.

HOFFMAN, JUSTICE.

This is a suit under the Federal Employers' Liability Act, 45 USCA, Sec 51, et seq. The defendant railroad appeals from a judgment on a verdict for $30,000 awarded to the plaintiff for injuries suffered by him in a switching movement in the defendant's yards at Decatur, Illinois.

The accident happened on July 21, 1958. At the time, plaintiff was a job foreman in charge of the car

inspectors and car repairmen. He was a supervisory employee and, as one of his duties, instructed men in safety rules.

There were six live tracks in the yard, running easterly and westerly. The tracks were numbered from the main track to the south. The accident happened on track No. 3. Track No. 3 descends from the west to the east, approximately 6 inches in a distance of 800 feet and has a capacity of 39 cars. When cars are kicked into track No. 3 from the west, they pass over a lead track which also supplies tracks No. 1 and No. 2.

Between 11:30 a. m. and 12:00 noon on July 21, 1958, plaintiff was in the yard inspecting an incoming train on track No. 2. As he was proceeding between tracks No. 2 and No. 3, checking cars on track No. 2, his attention was called to a hammering noise that came from the inside of a tank car located on track No. 3 to his right. He decided to investigate to determine the source of the noise. He climbed the east sill step and walked along the running board to the dome ladder near the center of the car and then proceeded up to the dome platform. The dome was open, and he looked in. Inside was an employee of American Tank Car Company repairing a valve. This employee came up out of the car and straddled the tank dome. Plaintiff remained on top of the tank car four or five minutes giving little, if any, attention to activity to the west. At the time, on track No. 3, there were approximately 25 to 30 cars east of the one on which plaintiff was standing and 3 or 4 cars to the west.

There was a switching movement in progress in the yards. The yardmaster gave the crew orders to kick four tank cars from the main track into track No. 3. The locomotive, facing east, coupled onto the tank cars and pulled them approximately 600 feet to the west until they reached a point where they could be lined up for movement in order to kick the four tank cars into

track No. 3. The field man gave the signal to proceed, and the cars were shoved to the east. When the cars reached a speed of from six to eight miles an hour, the brakes were applied on the engine and the pin was pulled letting the tank cars roll free. The cars were cut loose when they were approximately 800 feet westerly of the first car on track No. 3. The four loose cars proceeded over frogs and switches toward track No. 3. There was no rider on the lead cut of cars being kicked.

Plaintiff testified that while he was on the tank car talking to the repairman, he heard a violent crash and glanced over his shoulder and saw a cloud of smoke. He stated there was a "terrific crash" and the next thing he knew he was thrown violently in the air off the tank car. He landed on his hips, elbows and hands almost against the rail on track No. 2. Plaintiff further testified that it was the custom of the defendant railroad to have a rider on the lead car in all kick movements. This statement of custom was denied by other employees of the defendant railroad.

There was in force a blue-flag regulation which provided, in substance, that before performing any work under or between equipment, the workmen must place a metal blue flag by day and a blue light by night at each end of the track. This was not done at the time plaintiff was injured. Plaintiff testified, too, that where hand switches are used, the workmen making repairs not only place blue signals but also lock the switches to divert the traffic from the track on which the repair work was to be performed.

In his complaint, the plaintiff charged that the defendant was negligent in the operation and control of the cut of cars; that it moved cars into the train on which plaintiff was standing without warning; that it moved a train of cars without ascertaining whether it was safe to permit the same to move free and unattached; that it failed to provide plaintiff with a reason-

221

ably safe place to work; that it adopted an unsafe method of performing its work.

On appeal, defendant claims that the court should have directed a judgment for it notwithstanding the verdict, on the ground that the plaintiff was injured solely as a result of his own conduct and that the defendant was not guilty of any negligence whatsoever. It further contends that the giving of certain instructions was erroneous and that the trial court should have granted it a new trial because the verdict was excessive.

The argument of the defendant against liability centers on the conduct of the plaintiff. The defendant points out that plaintiff was acquainted with the safety rules; that he was the one who instructed others not to go on top of a car without putting up a blue flag and locking the track, and that in doing so, he had violated his own instructions and knowingly had placed himself in a position of danger without using any caution. Defendant refers to the number of railroad employees who testified that the method of making the switch was the usual and customary one for more than twenty years. In addition, defendant calls attention to the fact that no evidence was introduced to show that other railroads had adopted other methods or that the method used by the defendant was not the one customarily used in the railroading industry.

The plaintiff answers by stating that the initial inquiry should be directed to the defendant's negligence, if any, which "played a part" in plaintiff's injuries and refers to the case of Glime v. New York Cent. R. Co., 5 Ill App2d 509 at page 517, 126 NE2d 385 at page 388.

Plaintiff insists that a review of an F.E.L.A. case is limited to whether the proofs justify with reason the conclusion that the employer's negligence played any part, even the slightest, in producing the injuries; and, that it is of no consequence that the employee's

222

own negligence contributed to the result. Plaintiff cites for this, the case of Rogers v. Missouri Pac. R. Co., 352 US 500, 1 L Ed 493, where the court concluded that the inquiry in F.E.L.A. cases presents the single question whether negligence of the employer played any part "however small" in the injuries forming the basis of the lawsuit.

We quote from Rogers at page 507 of 352 US, page 449 of 77 S Ct:

". . . the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part . . . in producing the injury. . . It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes. . . Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities."

██ From a review of the cases, it is clear that there must be some negligence to charge the defendant, but plaintiff's conduct does not bar recovery if the defendant is negligent. On review, the only question is whether there is some evidence, however small, to support a finding that the defendant was negligent which contributed in part to plaintiff's injuries.

This court in the F.E.L.A. case of Coleman v. Gulf, Mobile & O. R. Co., 17 Ill App2d 220, 149 NE2d 656 indicated the permissible function of a court of review and there limited it to the determination of whether

there was an evidentiary basis for the jury to find negligence of the employer. We further reviewed this question in Pennell v. Baltimore & O. R. Co., 13 Ill App2d 433, 142 NE2d 497. See also Lavender v. Kurn, 327 US 645, 66 S Ct 740, 90 L Ed 916.

A very recent expression of the United States Supreme Court is found in the case of Gallick v. Baltimore & O. R. Co., 372 US 108, 83 S Ct 659, 9 L Ed2d 618, where the court stated that the question was whether there was evidence that any employer negligence caused the harm, or, "more precisely, enough to justify a jury's determination that employer negligence had played *any* role in producing the harm." In the Gallick case, the plaintiff was working near a pool of stagnant water infested with decayed rats and pigeons. He experienced a bite on his leg, and felt an object under his trousers which he crushed causing it to drop to the ground. Later the wound became infected and amputation of both legs was necessary. The jury held for the plaintiff against the railroad and also answered an interrogatory in the negative which asked if there was any reason for the defendant B. & O. Railroad to anticipate that maintaining a stagnant pool would or might probably result in an injury.

Notwithstanding the special interrogatory, the Supreme Court of the United States reversed the Ohio Court of Appeals, which had set aside the verdict for the plaintiff, on the grounds that the Court of Appeals had improperly invaded the province of the jury in a Federal Employers' Liability Act case. We have reviewed other F.E.L.A. cases, but do not cite them for that would unduly lengthen this opinion.

■ It is clear that the province of the jury in determining the liability in an F.E.L.A. case is broad, and if there is any evidence to support negligence of the

defendant, the case properly is one for the jury to decide.

■ It is true that if the injury results solely from the conduct of the plaintiff there can be no recovery. A good illustration of this is found in Helton v. Thomson, 311 Ill App 354, 36 NE2d 267, certiorari denied, 316 US 688. There, the plaintiff, without knowledge of the engineer and foreman and in violation of his orders, caused a train to back onto a house track instead of a passing track as he had been ordered. The plaintiff controlled the movement of the train and directed it into a situation which created the danger and his subsequent injury.

Defendant places a great deal of emphasis upon the case of Ottley v. St. Louis, San Francisco Ry. Co., 360 Mo 1189, 232 SW2d 966, certiorari denied, 340 US 948 and argues that "the facts of that case and the allegations made by the plaintiff were virtually identical to those in the instant case." In Ottley, an experienced railroad car inspector was injured while crawling under the coupler between two coal cars standing on a switch track at a time when he knew there was switching going on beyond his view. In crawling between the cars, he was violating a company regulation. The Missouri Supreme Court, in denying recovery, placed its main emphasis upon the conduct of the plaintiff and held that there could be no recovery under F.E.L.A. where the violation of a regulation promulgated by the employer is the sole proximate cause of the injury. There was no indication in the opinion that there was any proof of employer negligence.

■ In the instant case, there is evidence in the record which establishes a reasonable basis from which the jury could conclude that the defendant was guilty of negligence which contributed, in whole or in part, to plaintiff's injuries. The evidence brings the instant

225

case within the rule of the cases previously cited and takes it out from under the authority of Ottley.

In this case there was evidence that there was no man riding the lead car of the cut and, there was evidence that it was customary in operations of this type to have a man ride the lead car. Further, there was evidence that the operators of the switching movement were familiar with the fact that other employees might be working on the premises, but that they took no special safeguards to make certain that when the cars were cut loose there was no one in the vicinity.

Without question, free rolling cars would present a dangerous situation and would require extreme caution even though it might be customary to switch cars in this manner. Further, the impact of the free rolling cars and the train upon which plaintiff was standing was described as being "terrific" and that impact was so great that it "lifted" plaintiff. These facts bring the instant case peculiarly within the factual situation and rule announced in Bonnier v. Chicago, B. & Q. R. Co., 2 Ill2d 606, 119 NE2d 254.

Based on the cases referred to, particularly Gallick, Rogers, Glime and Bonnier, we hold that a question existed for the jury to determine under the Act.

The defendant further complains that plaintiff's instructions No 16 and No 21 were erroneous, and that the trial court's refusal to give defendant's instruction No 7 was likewise erroneous.

■ ■ Plaintiff's instruction No 16 was an instruction concerning the evidence of life expectancy introduced at the trial. The applicable instruction in IPI (No 34.04) should have been used and not the modified form which was given. The modified instruction which was given was severely criticized in Avance v. Thompson, 387 Ill 77, 55 NE2d 57, and it is a pity that our present practitioners cannot follow IPI, especially where an instruction which they

tender has been condemned by the Supreme Court of this state. However, as pointed out in the Avance case, we will not reverse because of this alone.

■ Plaintiff's instruction No 21 referred to the elements of damages that the jury could consider if they found for the plaintiff. We do not find any error in the giving of this instruction.

■ Defendant's No 7, which was refused by the court, was IPI No 5.01 and, if given, would have informed the jury that it could infer that testimony of witnesses not called would be adverse if the witnesses were under the control of the party, and if the witnesses were not equally available to the adverse party. The witnesses not called were the several physicians who attended plaintiff. For authority, defendant cites the case of Santiemmo v. Days Transfer, Inc., 9 Ill App2d 487, 133 NE2d 539 which approved comment in final argument on the absence of witnesses and also approved an instruction. Such an instruction was likewise approved in Petersen v. General Rug & Carpet Cleaners, 333 Ill App 47, 65, 77 NE2d 58, 67. However, no case is cited holding it reversible error alone not to give the instruction. To hold that it alone constitutes reversible error would impose upon the plaintiff, the task of producing every medical attendant who treated him or else be faced with the charge by the court that the testimony would be adverse. This result would be undesirable and we believe the trial court should have a wide discretion in giving of this instruction.

■ We have reviewed the instructions as a whole and cannot conclude that the jury was so unfairly and improperly instructed upon the law applicable as to require reversal.

■ Lastly, defendant complains that the verdict is excessive. At the time of the accident, plaintiff was 55 years of age. He had been employed with the defendant railroad since 1927. Before the accident, he

was in good physical condition and was not under the care of any doctor. He spent his spare time bowling and hunting. When he was injured, he was taken to the hospital and placed on a thin hard mattress, and there he remained for 30 days. He then went home and was confined to bed for 3 months. He then had considerable pain in his right leg. Later, he went to another physician who fitted him with a corset with steel stays in the back. He was wearing this support at the time of the trial. He stated he always wears it because of pain in his back. He said, too, that he still has numbness and tingling down his right leg, that he has trouble with his knee, and that his ring finger and little finger on the left hand are numb. The lower part of his back pained him severely. Every day he took a hot bath for 30 to 40 minutes and sometimes as long as an hour. He takes aspirins, uses a heating pad and has difficulty sleeping.

The medical testimony indicated that plaintiff suffered a compression fracture of the second lumbar vertebra. The testimony further lends support to the conclusion that the plaintiff would need further medical treatment due to the fact that he still had pains in his back and legs. The evidence tended to support a finding that it might be necessary for some sort of immobilization or use of a body cast. These conclusions came in the form of answers to hypothetical questions. Whether the conditions existed as described in the hypothetical and whether the conclusions and opinions given followed from the evidence of plaintiff's injuries were for the jury to decide. We cannot say here that the damages were excessive or that there was no evidence to support the award.

The judgment is affirmed.

SCHEINEMAN, P. J. and CULBERTSON, J., concur.