**Henry Richard, Plaintiff-Appellant, v. Clarence Dauby, Defendant-Appellee.**

**Gen. No. 69–30.**

Fifth District.

April 24, 1970.

Rehearing denied May 21, 1970.

MORAN, P. J., dissenting.

Leonard J. Dunn, of West Frankfort, for appellant.

C. William Fechtig, of Carmi, for appellee.

GOLDENHERSH, J.

Plaintiff appeals from the judgment of the Circuit Court of White County entered upon a jury verdict awarding plaintiff $3,000 in his action for personal injuries. As grounds for reversal plaintiff contends the trial court erred in refusing to permit a proper voir dire examination of prospective jurors, and its ruling denied him a fair trial resulting in a grossly inadequate verdict.

The record shows plaintiff ascertained by interrogatory that defendant was insured by Country Mutual Insurance Company, hereafter called Country Mutual. He filed a motion alleging that the defense of this action was being conducted by Country Mutual; Country Mutual is a branch department of the Farm Bureau; policyholders or persons interested in Country Mutual and the Farm Bureau are mostly farmers and farm owners; White County is composed largely of farmers and such persons "as would likely be policyholders in the Country Mutual or officials of the Farm Bureau, or officers, agents or employees of either;" it has been the policy of the said Country Mutual and the said Farm Bureau, for many years, to attempt to influence prospective jurors in personal injury cases, by means of various advertising, propaganda, speeches, brochures, gossip and other means, for the purpose of prejudicing the general public against litigant plaintiffs, and for the purpose of securing and obtaining verdicts favorable to the Insurance Company in personal injury cases tried by juries; it appears obvious from the remarks, innuendos, accusations and implications of the exhibits hereto attached, that the entire purpose and design of such propaganda is to lead the public, and prospective jurors chosen from the public, to

return a verdict favorable to the defendant in any personal injury case; such obvious jury tampering as has been repeatedly and openly carried on and conducted by said Country Mutual, for many years prior hereto, in the aforesaid manner, and particularly among its policyholders and members of the Farm Bureau, "should automatically disqualify any juror called for voir dire examination in the trial of this cause, who is revealed to be a policyholder in said Company or a present or past member of the Farm Bureau, or any officer, Agent, Employee, or direct relative thereof, of either."

The motion concludes "that upon the voir dire examination of the jurors in the trial of this cause, plaintiff's counsel be permitted to question the prospective jurors as to whether they are policyholders of Country Mutual Insurance Company, or whether they are officers, agents, employees, or direct relatives thereof, of either the said Country Mutual Insurance Company or the said Farm Bureau; that upon such juror giving a positive answer, that this court will automatically excuse such prospective juror. . . ."

Three exhibits are attached to the motion. Exhibit 1 is a report of a speech made by Country Mutual's public relations manager printed in a newspaper widely circulated in White County, in which he stated that Illinois juries in the last court term had thrown out approximately half of all personal injury cases as without merit; that

> "Many of the cases stacked up in the court backlogs were never intended to be tried to verdict by the plaintiffs who filed them. Only those cases in which plaintiffs and their lawyers are convinced are good enough to win a jury's favor are actually pressed to trial and verdict.
>
> "And here in Illinois juries are rejecting just about half of the so-called 'prime' cases as having no merit

344

whatsoever, and the plaintiff walks away with nothing.

"Significantly, in many of the decisions that went for the plaintiff, the awards arrived at were no greater and very often considerably less than settlements that had been offered to the plaintiff and could have been his for the taking without the expense of a court trial. And remember, under the contingency fee system in which most of these cases are tried, the lawyers for the plaintiffs take at least 25 percent, more often 33 percent, and sometimes up to 50 percent of court awards."

Exhibit 2 is a brochure entitled "Important Facts About Your Auto Insurance Rate" mailed by Country Mutual to its policyholders to announce a rate increase and stating in part:

"Last year's increase was intended to offset the soaring cost of claims resulting from accident frequency and severity. But Country Mutual (and practically all other insurance companies) did not know the amount paid on claims would go way beyond what was expected.

"Country Mutual's average payment per claim last year was nearly 20 percent higher than in 1964.

"Country Mutual wasn't alone. Auto claims losses paid by all insurance companies in Illinois hit a new high of more than $300 million in 1965.

"The average accident verdict handed down by Illinois juries was much higher than in previous years.

. . . . . .

"The number of serious accidents continues to increase. The price of auto insurance is directly affected by the driving experiences of policyholders, jury verdicts, auto repair and medical costs—which are beyond the control of auto insurance companies.

"Future claims experience of the company's auto policyholders will play a major role in determining the base rate for Country Mutual's auto insurance."

Exhibit 3 is an article published in the Illinois Farm Bureau Magazine, entitled "Country Mutual Increases Auto Insurance Rates" which reads in part:

"Country Mutual's average payment per claim in 1965 was about 20 percent higher than in 1964. A part of this increase is a result of a growing tendency of too many jurors, serving in accident cases, to return awards entirely out of proportion to the actual damage or injury involved.

"Land (Country Mutual's vice president) said the attitude of many of these jurors is, 'The Insurance Company has lots of money, so the amount of the verdict is not important.' This attitude overlooks the important point that it is unjustified and excessive jury awards that are contributing to higher insurance premiums."

Defendant filed the affidavit of one of the secretaries in the Farm Bureau office who listed sixteen of the jury panel of forty-four members, and stated:

"The undersigned, first being duly sworn, on oath states that she is a Farm Bureau Organization Secretary and as such is familiar with the White County rolls and membership lists of members of the Farm Bureau, insureds of Country Mutual Insurance Company, officers, agents and employees of either of them and that she has made diligent inquiry as to the spouses and other relatives living in the homes thereof; she further states that the following persons are the only ones included in the attached list who come within the listed categories: (16 named persons)."

346

The court entered an order which concludes "that the motion is overruled, however, the attorneys for the Plaintiff may excuse any member listed on the affidavit filed herein, and it will be considered as a challenge for cause; it is further ordered that the Clerk not call any member so listed to the jury box in order to avoid the possibility of injecting insurance into the case."

Plaintiff contends the affidavit filed on behalf of defendant is much narrower in scope than his motion which sought to inquire as to the jurors' interest as policyholders, former policyholders, officers, agents, employees or direct relatives thereof. He argues such relatives would not necessarily be residents of the same house to come within the scope of the motion, and only by questioning on voir dire could this interest be ascertained.

As pointed out in the dissenting opinion in Kavanaugh v. Parret, 379 Ill 273, 282, 40 NE2d 500, there are counties in Illinois in which mutual insurance companies with large numbers of policyholders operate, and because of the presence of so many of such policyholders on jury panels, it is difficult, if not impossible, in an automobile collision case to receive a fair trial.

In a number of cases our Supreme Court has considered the questions of when and to what extent prospective jurors may be examined on voir dire as to their interest in, or relationship to, liability insurance companies. (See Smithers v. Henriquez, 368 Ill 588, 15 NE2d 499; Edwards v. Hill-Thomas Lime & Cement Co., 378 Ill 180, 37 NE2d 801; Kavanaugh v. Parret, 379 Ill 273, 40 NE2d 500; Moore v. Edmonds, 384 Ill 535, 52 NE2d 216; Wheeler v. Rudek, 397 Ill 438, 74 NE2d 601; and Haymes v. Catholic Bishop of Chicago, 41 Ill2d 336, 243 NE2d 203.) The rule evolved is that a plaintiff, in good faith, may inquire upon voir dire as to the jurors' or their relatives' possible connection with or interest in liability insurance companies for the purpose of intelligently exer-

cising his right to peremptory challenge to the end of obtaining a jury free from prejudice. Such inquiry is proper even though it may develop a suspicion in the minds of the jury that the defendant is insured, so long as it is made in good faith and not for the purpose of disclosing to the jury that the defendant is insured.

Plaintiff states in his brief that it developed on voir dire that four of the jurors owned farm land, another was the wife of a truck driver who farmed, and another operated a grocery store in a small farming community. He contends one or more of these probably had an interest in Country Mutual or the Farm Bureau, and because of the ruling on his motion he was precluded from inquiring as to such interest and was thereby prejudiced.

■■ Although we are inclined to agree with plaintiff's categorization of the exhibits and his appraisal of their purpose and intent, the record does not contain the voir dire examination and in its absence the contention that the court improperly limited the extent of his inquiry, and in so doing erred, is not before us on review. Augustine v. Stotts, 40 Ill App2d 428, 189 NE2d 757. On the record before us it appears that the court in ordering the clerk not to call any juror named in defendant's affidavit, gave plaintiff all the relief sought by the motion.

■ Plaintiff contends that in view of the severity of his injuries the verdict is so grossly inadequate as to require a new trial. The evidence shows special damages in the amount of $506.70 and from our examination of the medical testimony we are unable to say the verdict is so inadequate as to require reversal.

For the reasons set forth the judgment of the Circuit Court of White County is affirmed.

Judgment affirmed.

EBERSPACHER, J., concurs.

MORAN, P. J., dissenting:

The core of the majority opinion is "that the court, in ordering the clerk not to call any jurors named in defendant's affidavit, gave plaintiff all the relief sought by the motion." This misconstrues the scope of relief prayed for in plaintiff's motion.

The affidavit filed by the Farm Bureau disclosed only the present membership lists of the Farm Bureau and the present policyholders of Country Mutual Insurance Company, etc. Plaintiff's motion to interrogate jurors concerning their possible bias included not only those persons mentioned in defendant's affidavit but also "past members of the Farm Bureau, or any past officer, agent, employee or direct relative of either." Plaintiff's motion stated that Country Mutual Insurance Company is a branch department of the Farm Bureau.

Of forty-four persons on the whole jury panel, sixteen were stricken because of defendant's affidavit. When we consider that one-third of the jury panel had such a present relationship with the Farm Bureau and/or Country Mutual Insurance Company as to be subject to be stricken for cause, it is very likely that there were former policyholders of Country Mutual and "past" members of the Farm Bureau or past officers, agents, employees or direct relatives thereof, many of whom may have been the recipients of the propaganda of the Farm Bureau and/or Country Mutual Insurance Company and who were not listed in the affidavit.

Both sides in their briefs agree that both plaintiff and defendant are entitled to a fair trial before an impartial and unbiased jury.

In the recent case of Haymes v. Catholic Bishop of Chicago, 41 Ill2d 336, 243 NE2d 203, our Supreme Court quoted with approval the case of Moore v. Edmonds, 384 Ill 535, saying at 341:

349

"Nor was it reversible error to permit plaintiff's counsel to interrogate prospective jurors about their or their relatives' possible connection with insurance companies. The precise questions propounded here were permitted in Moore v. Edmonds, 384 Ill 535, where the court stated at p 541: 'Judicial opinion almost universally recognizes the right of the plaintiff in good faith to interrogate the jurors on their voir dire examination as to their, or their relatives' possible connection with, or interest in, liability insurance companies, in order to determine the expediency of exercising his right to peremptory challenge to the end of obtaining a jury free from bias and prejudice, even though such inquiries may develop a suspicion in the minds of the jury that defendant is protected by insurance.' "

Plaintiff has charged the Country Mutual Insurance Company and the Farm Bureau, who have the contractual right of conducting the defense of many personal injury suits in White County and who are parties in interest to the present proceeding, with conducting a deliberate campaign to bias prospective jurors who sit on the type of cases in which they are financially interested. Such charges, if true, would furnish a reasonable basis for plaintiff to believe that many persons, other than the sixteen jurors listed in the Farm Bureau's affidavit, received propaganda intended to prejudice them if and when they sit on juries. Since plaintiff's charges are not denied, the good faith of plaintiff's attorney in seeking to ascertain the potential bias of the jurors is established as a matter of law. The fact that defendant might be prejudiced by such voir dire examination is unfortunate, but this should not override the right of plaintiff to try his case before disinterested parties. One who by his own action seeks to prejudice or bias jurors for his financial interest can hardly be heard to complain when the party

350

who stands to lose by his propaganda seeks to inquire as to whether that propaganda has been effective.

In my opinion, the trial judge erred in denying plaintiff a reasonable interrogation on the matters that he requested.