James Feigl, Plaintiff-Appellant, *v.* Terminal Railroad Association of St. Louis, Defendant-Appellee.

(No. 71-241;

Fifth District—July 1, 1975.

56

G. MORAN, J., dissenting.

Chapman, Talbert & Chapman, of Granite City (Charles W. Chapman, of counsel), for appellant.

Roberts, Gundlach & Lee, of Belleville (Richard M. Roessler, of counsel), for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff brought this action under the Federal Employers' Liability Act and the Federal Safety Appliance Act to recover damages for personal injuries which were alleged to have been caused either by the negligence of the defendant or by a violation by the defendant of the Safety Appliance Act (45 U.S.C. §§ 1-16, 51-59.) The jury returned a verdict for the defendant. Thereafter the plaintiff filed a motion for judgment notwithstanding the verdict or for a new trial. The trial court denied plaintiff's motion. Plaintiff appeals.

The facts pertinent to the occurrence out of which this case arose can be summarized as follows: The plaintiff, James Feigl, was an employee of the defendant, Terminal Railroad Association of St. Louis, and on December 15, 1968, the date of the occurrence, was working as a switchman. His crew had been sent to defendant's St. Louis yard to return a freight train from that yard to defendant's East St. Louis yard. At the St. Louis yard plaintiff and another member of the crew, James Huffman, were directed to connect all of the air hoses for the braking system of the train. They did this and then entered the caboose for the run to East St. Louis. Insofar as the plaintiff and Mr. Huffman were aware, there were no leaks in the air system. On the other end of the train the engineer, Virgil Ladd, detected a slight leak in the air system but did not feel it would be a problem in the proper functioning of the train; so the trip to East St. Louis was begun.

As the train proceeded to East St. Louis, it was necessary to go over a hill or viaduct. The single engine was unable to pull the train up the grade, so another engine was dispatched. The second engine, with its crew, came to the point where the train had stopped and coupled onto Mr. Ladd's engine. The engineer of the assisting engine was Curtis White.

With the two engines pulling, the train proceeded. When part of the train had been pulled over the crest of the hill, Mr. Ladd's engine ran out of fuel. This necessitated transferring the control of the air for the braking system to Mr. White's engine. Mr. Ladd had not informed Mr. White of the slight leak in the air system. According to Mr. White's testimony, he either did not detect any leak in the air system or did not detect leakage in an amount uncommon for a freight train.

As the train proceeded down the hill and began to pick up speed, Mr.

White applied the train brakes to check the momentum of the train. As the brakes were applied, the train jolted or jerked. In the caboose the plaintiff, who was in the process of arising from a sitting position when the jolt occurred, was thrown to the floor.

Eventually the train reached the East St. Louis yard without further incident. Apparently no tests were run on the air system that night. At the trial, however, there was testimony from Mr. Feigl, Mr. Huffman, Mr. White, and Mr. Ladd as to what might have caused the jolt. There was also testimony by three expert witnesses, Dr. J. H. Deyton, Dr. G. R. Schoedinger, and Dr. L. J. Hill, who gave their conflicting opinions as to the nature and extent of the plaintiff's injuries.

Appellant contends that the trial court committed seven errors which relate to its conduct of *voir dire*, its rulings on admissibility of evidence, its rulings on instructions and its rulings on statement and arguments of counsel.

Appellant's first contention is that the trial court erred in conducting the *voir dire* examination in that it excused certain veniremen for cause, without any challenge for cause having been raised by the defendant, and in that it failed to excuse other veniremen with the result that plaintiff had to use his peremptory challenges to remove them. No record of the *voir dire* examination was made; and, therefore, no verbatim transcript of the *voir dire* examination is before this court. The appellant has included in his abstract an affidavit of his attorney which was filed with his post-trial motion and which lists specific parts of the *voir dire* as allegedly improper. Plaintiff does not contend that any objection was made to the conduct of *voir dire* at the time of trial.

While we recognize the importance of the *voir dire* examination and the necessity of conducting the examination properly in order to obtain an impartial jury, without a record of the *voir dire* examination before us we cannot say that the trial court acted improperly in conducting the examination. Supreme Court Rule 323(c) (Ill. Rev. Stat. 1973, ch. 110 (a), par. 323(c)) sets forth a method for providing a reviewing court with a record when no verbatim transcript has been made. The plaintiff could have employed this rule and provided this court with a record with which to consider this contention. As it is, we have no record and cannot say the trial court erred in conducting the *voir dire* examination. *Richard v. Dauby*, 123 Ill.App.2d 342, 259 N.E.2d 376 (1970); *Augustine v. Stotts*, 40 Ill.App.2d 428, 189 N.E.2d 757 (1963).

Appellant next contends that the trial court erred in admitting evidence of the habits and reputation of the engineer, Curtis White. Over appellant's objection, Virgil Ladd was permitted to testify that he had

always known Curtis White to be competent in his operation of his engine. Also over appellant's objection, Curtis White was allowed to testify as to his own competency as an engineer and that he had never had any complaints about the way he handled his engine.

Appellant cites *Lowry v. Chicago & North Western Ry Co.*, 248 Ill. App. 306 (1928), for the principle that evidence of habits or reputation are inadmissible where there are eyewitnesses to the event in question. Appellant also cites *Stegmann v. Zachariah*, 46 Ill.App.2d 7, 196 N.E.2d 703 (1964), and *Hickey v. Chicago Transit Authority*, 52 Ill.App.2d 132, 201 N.E.2d 742 (1964), for the principle that it is error to introduce evidence of reputation when reputation is not in issue. Finally, appellant cites *Holtzman v. Hoy*, 118 Ill. 534, 8 N.E. 832 (1886). In *Holtzman* it was held that even though a physician's skill is put in issue in a malpractice suit, his reputation is not in issue, and therefore reputation evidence is not admissible.

While we do not dispute the soundness of these principles where applicable, we feel that a different evidentiary problem is presented here. In his complaint plaintiff alleged that the defendant, Terminal Railroad Association of St. Louis, was negligent in permitting the engineer to operate an engine when it knew or should have known that the engineer was unfit and incapable by temperament or experience to operate the engine competently. The engineer at the time of the occurrence out of which this action arose was Curtis White. Thus, the issue was whether the defendant was negligent in employing Curtis White.

When the issue is negligence in employing an allegedly incompetent or unskillful employee, the character of the employee for competency and skill is put into issue. The character can be proved by specific incidents or by reputation, reputation being the community estimate of character. 1 J. Wigmore, Evidence §§ 202, 208 (3d ed. 1940); E. Cleary, Handbook of Illinois Evidence §§ 12.3, 12.4 (2d ed. 1963).

■■ In *Western Stone Co. v. Whalen*, 151 Ill. 472, 38 N.E. 241 (1894), it was held that where the basis of plaintiff's action was the employment of an incompetent fellow servant by defendant, evidence of the general reputation of the servant could be admitted on the question of the servant's competency. In the case of *Illinois Central R.R. Co. v. Morrissey*, 45 Ill.App. 127 (1892), involving a situation not unlike the one out of which the instant case arose, a railroad employee was injured as a result of operation of the engine by the engineer. On the question of the degree of care exercised by the railroad in entrusting the engineer with the engine, the railroad sought to show the reputation of the engineer for operating the engine. The court stated:

"General reputation for competency and care at the time and place of employment, of such character as to imply information to the employer, is admissible as tending to disprove the alleged negligence in employing him." (45 Ill.App. 127, 135.)

Thus it was not error to allow into evidence the statements by Mr. Ladd and Mr. White as to the latter's competency as an engineer.

Mr. White's testimony that no complaints had been received by him that he was incompetent to operate an engine may be characterized as circumstantial evidence of his character for competency and skill. We feel that such evidence is of minimum probative value and undoubtedly would have been received by the jury as such; however, it would tend to bear on his character as a competent engineer. It would be relevant to the question of the railroad's negligence in employing a competent engineer as it would bear on what information was known or reasonably should have been known concerning White's skill and competency.

We do not believe that *Staunton Coal Co. v. Bub*, 218 Ill. 125, 75 N.E. 770 (1905), holds otherwise, as the court there stated that the question of defendant's employee's skill as an engineer was not put in issue. Such evidence is, of course, relevant in that it has probative value to prove or disprove the question in issue. Courts have been reluctant to allow its use, however, out of policy considerations relating to confusion of issues and unfair surprise. Where the pleadings raise the issue of an employer's negligence in hiring an incompetent or unskillful employee, however, the character of the employee is directly put in issue and the element of surprise is lessened.

Here the evidence was admissible as bearing on the notice or lack of notice to the employer of information regarding White's skill or lack of skill. The evidence was not introduced as bearing directly on White's character as a skillful or unskillful engineer and thus, in a sense would be akin to reputation evidence so far as the defendant was concerned. 2 J. Wigmore, Evidence § 250 (3d ed. 1940); 5 J. Wigmore, Evidence § 1614, 1621 (Chadbourn rev. ed. 1974) (disapproving *Holtzman*).

Plaintiff next contends that the trial court erred in excluding a diagramatic representation of a herniated disc which plaintiff sought to have Dr. Schoedinger use during his testimony. The objection of the defendant to the diagram was that it was prejudicial and not related to plaintiff's injury. There is nothing preserved in the record relating to the diagram nor is it before us. Dr. Schoedinger did refer to X-rays of the plaintiff's spine to explain the nature of plaintiff's injury and indicated that this was adequate for this purpose. We are not sure whether plaintiff's complaint is that the diagram was not received in evidence, or

that Dr. Schoedinger was not allowed to used the diagram as a forensic aid in explanation of his testimony.

■■ The diagram was clearly not admissible in evidence as it represented a severely herniated disc, one of the contested issues in the case being the existence or nonexistence of a herniated disc, and there was no suggestion that the diagram in any way represented plaintiff's condition. On the other hand, if the diagram were to be employed as an aid by Dr. Schoedinger in explaining his testimony, then it is within the sound discretion of the trial court whether to allow the use of such diagrams or models by expert witnesses to clarify their testimony or assist them in the presentation of their testimony. We think the better rule favors liberal use by expert witnesses of demonstrative devices in explanation of testimony; however, the trial court has broad discretion in this regard and we cannot say that refusal to allow the use of this diagram, if in fact this was the purpose, was an abuse of discretion considering that the nature and extent plaintiff's injuries was a matter of sharp disagreement among the medical witnesses.

The next error alleged by the plaintiff is the admission of evidence of the pending lawsuit of the witness James Huffman against defendant. The plaintiff contends that allowing inquiry into the personal injury claim a witness may have pending against the defendant is so highly prejudicial as to go beyond the bounds of proper cross examination. For this contention plaintiff cites *Meyer v. Williams*, 15 Ill.App.2d 513, 146 N.E.2d 712 (1957); *People v. Wesley*, 18 Ill.2d 138, 163 N.E.2d 500 (1959); and *Schmitt v. Chicago Transit Authority*, 34 Ill.App.2d 67, 179 N.E.2d 838 (1962). None of these cases presents the same situation as the instant case. In these cases, the court refused to allow questioning of the witness concerning a lawsuit pending against the defendant because the witness in each case did not have a direct interest in any pending suit.

■■ One of the most important functions of cross-examination is to show the motives, interest, and bias of a witness. A witness who has a lawsuit pending against the defendant, which arose out of the same occurrence which is the subject matter of the proceeding in which he is a witness, would certainly be interested in the outcome of the proceeding.

■■ In the instant case the question objected to involved only the pending claim of the witness himself. We feel, therefore, that the questioning was proper to show the interest or bias of the witness, James Huffman.

Plaintiff next complains that the trial court erred in refusing to give Illinois Pattern Instruction No. 5.01 relating to the possible inference that might be drawn from the failure of a party to call witnesses under

his control, in this instance other crew members of the train. In support of its argument, plaintiff cites *Santiemmo v. Days Transfer, Inc.* 9 Ill. App.2d 487, 133 N.E.2d 539 (1956), and *Bassi v. Morgan,* 60 Ill.App.2d 1, 208 N.E.2d 341 (1965). These cases only support the propriety of giving this instruction. No case has been found where it has been held to be reversible error to fail to give this instruction. (See *Hildebrand v. Baltimore & Ohio R.R. Co.,* 41 Ill.App.2d 217, 190 N.E.2d 630 (1963).) Before this instruction is proper, the court must make a preliminary determination that a party would in all likelihood produce the witnesses in quesion under the facts and circumstances of the case unless their testimony would be unfavorable. Here the instruction was directed to the calling of other members of the train crew not present in the caboose or engine. Such witnesses may or may not have been able to furnish testimony relevant to the occurrence in question. It is difficult to understand how these witnesses would have information equal or superior to that of the witnesses who were called. While plaintiff points out that they were employees of the defendant, yet the record discloses that one of plaintiff's witnesses was Virgil Ladd, one of the engineers employed by the defendant. The record also shows that plaintiff subpoenaed White and Williamson pursuant to Supreme Court Rule 237 (Ill. Rev. Stat., ch. 110A, par. 237). It would appear that the witnesses in question were readily available to the plaintiff and that their failure to testify was not because of their unavailability. In any event, we cannot say that the trial court abused its discretion under the facts of this case in refusing to give the tendered instruction.

Plaintiff contends that the trial court erred in refusing to give Illinois Pattern Instruction 11.01, defining contributory negligence, while giving 10.03 which instructed the jury that plaintiff had a duty to be free from contributory negligence. When the plaintiff tendered 11.01, the defendant objected, stating it had an instruction on that issue it would offer. The trial court sustained defendant's objection. No other instruction defining contributory negligence was ever tendered by the defendant. Appellant cites the comments of the Illinois Supreme Court Committee on Jury Instructions to Illinois Pattern Instructions 10.03 and 11.01, which state that 11.01 should be used whenever contributory negligence is a jury issue and it should be used with 10.03.

One of the difficulties with plaintiff's contention is that he neglected to resubmit 11.01 after it was apparent that the defendant neglected to offer an instruction on the subject of contributory negligence. We do not think that the plaintiff can sit by at the instruction conference as he did here and later gain an advantage from an obvious oversight that he

could have remedied. Under the facts of this case, his fault or neglect was equal to that of the defendant.

The thrust of appellee's contention on this point is that since contributory negligence would not be a complete bar to recovery under the Federal Employer's Liability Act and would not even be relevant, let alone a partial defense under the Federal Safety Appliance Act, the verdict in favor of defendant indicates that plaintiff was not prejudiced by the court's refusal to give Illinois Pattern Instruction 11.01 since the jury verdict in favor of the defendant was grounded on a finding of no liability. Appellee cites *McManus v. Feist,* 76 Ill.App.2d 99, 221 N.E.2d 418 (1966), in support of this contention. Appellee also points out that the instructions should be considered as a series and that since the jury was instructed that contributory negligence at most went only to mitigate or diminish damages, no reversible error was committed.

■■ We agree with appellee's contention that the failure to give the tendered instruction could not have prejudiced the plaintiff. In an action based on the Federal Employer's Liability Act, contributory negligence does not bar recovery but only diminishes damages on a comparative negligence basis. Under the Federal Safety Appliance Act, it is not even part of the case. The verdict in favor of the defendant established that the jury never reached the damage issue to which this instruction would have applicability.

■■ The jury was properly instructed that contributory negligence could only serve to diminish or mitigate plaintiff's damages under the Federal Employer Liability Act count; they were instructed that contributory negligence on the part of the plaintiff was no defense and did not serve to diminish or mitigate damages for injuries resulting in whole or in part from a violation of the Federal Safety Appliance Act.

■■ The instructions taken as a series fully informed the jury of the applicable law of the case. The verdict could not have been based on any confusion or misunderstanding that plaintiff's negligence would bar recovery on his part.

We question whether the inadvertent failure to give this instruction would be error in any event where the jury was fully instructed on the law of the case and the Illinois Pattern Instruction defining negligence was given. Plaintiff's closing argument reflects a full discussion of the role of contributory negligence under the applicable law and we believe it is within the competence of men and women of ordinary intelligence to be able to understand the concept of contributory negligence under these circumstances. *Johnson v. Jackson,* 43 Ill.App.2d 251, 193 N.E.2d 485 (1963).

Appellant's final contention is that the trial court erred in allowing improper argument by defendant's counsel. In particular, appellant refers to statements made by defendant's counsel in his opening statement and, in his closing argument. One such statement was that it was plaintiff's duty to check the braking system and the air hoses. Of course, plaintiff had no duty to discover defects in the safety equipment as far as the railroad's liability under the Federal Safety Appliance Act is concerned. *McCarthy v. Pennsylvania R. Co.*, 156 F.2d 877 (7th Cir. 1946), *cert. denied* (1947), 329 U.S. 812, 91 L.Ed. 693, 67 S.Ct. 635. Another statement was, in effect, that there was no evidence of improper brakes, since plaintiff testified that he had checked the brakes and had found them to be working properly. A third statement was to the effect that the jury should consider plaintiff's own negligence which contributed to the accident, since he was the one who checked the brakes.

■■ The appellee contends that the statements were properly admitted because, on one hand, they correctly described plaintiff's duties of employment and not a duty in relation to the Safety Appliance Act, and, on the other hand, they were aimed at showing there was in fact no violation of the Safety Appliance Act. Plaintiff testified that he did couple the air hoses which activate the braking system and that the system appeared to be functioning properly; this and other evidence was competent to show that there was no defect in the air or braking system, as the jury found. It also was material to one of the allegations of negligence, that the defendant negligently failed to inspect the braking system. While plaintiff's negligence was no defense to the alleged violation of the Safety Appliance Act, it was important in mitigation of damages under the Federal Employer's Liability Act. The jury was fully instructed on these aspects of defendant's liability, and we see no error in the statements or arguments complained of.

Counsel for plaintiff should have been allowed to explain to the jury the applicability of any negligence on plaintiff's part as to the defendant's liability under the Safety Appliance Act and the Federal Employer's Liability Act. Where the two acts are conjoined in one action, it is apparent that this may present some confusion. Plaintiff objects that the court sustained the railroad's objection to his argument that it did not matter what the plaintiff did as far as the train braking system was concerned. Plaintiff's counsel immediately explained without objection that the plaintiff's conduct would not matter if the jury found a violation of the Safety Appliance Act.

We have examined the record in this case closely, and while not free

from error, find it free from prejudicial error which would require reversal. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

JONES, P. J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

I believe the trial court erred in allowing into evidence testimony that there had never been any complaints about the way Curtis White handled his engine. When the character of an employee is in issue, his reputation may be shown; however, statements which are not confined to reputation should not be allowed into evidence. Illustrative of this point is *Staunton Coal Co. v. Bub*, 218 Ill. 125, 75 N.E. 770. *Staunton* involved an action for damages for injuries to a miner, which resulted when the engineer hoisted the cage before the signal to hoist had been given. In his complaint the plaintiff alleged negligence of the employer in permitting an incompetent employee to operate the engine raising and lowering the cage. The defendant coal company sought to have the mine manager and his assistant testify as to whether they had ever received any complaints concerning the incompetency of the engineer in hoisting without a signal and as to whether any injuries had ever resulted from the acts of the engineer. Both of these questions were excluded by the trial court; however, the witnesses were permitted to testify as to the employee's general reputation as an engineer. The Illinois Supreme Court held that the evidence had been properly confined to general reputation. *Staunton Coal Co. v. Bub*, 218 Ill. 125, 128.

In this case the court, over the objection of plaintiff, permitted White to testify that there had never been any complaints about the way he handled his engine. In allowing such testimony into evidence over plaintiff's objection, the trial court erred. Statements as to the lack of complaints made about a particular individual are not part of the community estimate of that individual's character. Such statements are beyond the bounds of reputation and, therefore, when admitted can only tend to mislead the jury.

The trial court also erred in refusing to give an instruction defining contributory negligence, specifically plaintiff's instruction number 12, which was IPI 11.01, while giving IPI 10.03, which instructed the jury that plaintiff had a duty to be free from contributory negligence. When the plaintiff tendered IPI 11.01, the defendant objected, stating it had an

instruction on that issue it would offer. The trial court then sustained defendant's objection. In spite of defendant's statement, no other instruction defining contributory negligence was ever tendered by the defendant. Appellant cites the comments of the Illinois Supreme Court Committee on Jury Instructions to IPI 10.03 and IPI 11.01, which state that IPI 11.01 should be used whenever contributory negligence is a jury issue and that IPI 11.01 should be used with IPI 10.03.

The thrust of appellee's contention on this point is that since contributory negligence would not be a complete bar to recovery under the Federal Employer's Liability Act and would not even be a consideration under the Federal Safety Appliance Act, the verdict in favor of defendant indicates that plaintiff was not prejudiced by the court's refusal to give IPI 11.01. Appellee cites *McManus v. Feist,* 76 Ill.App.2d 99, 221 N.E.2d 418, 422 for this contention. Appellee also points out that the instructions should be considered as a series and that since the jury was instructed that contributory negligence could be, at most, only a mitigating factor, no reversible error was committed.

While I agree with appellee that generally in a case where contributory negligence could be, at most, a mitigating factor, a verdict for the defendant would negate any prejudicial effect of not giving an instruction defining contributory negligence. Under the circumstances of this case, not giving such an instruction constituted prejudicial error. This becomes apparent especially when viewing this issue together with the final issue raised by plaintiff.

Appellant contends that the trial court erred in allowing improper argument by defendant's counsel. In particular, appellant refers to statements made by defendant's counsel in his opening statement and in his closing argument. One such statement was that it was plaintiff's duty to check the braking system and the air hoses. Another statement was, in effect, that there was no evidence of improper brakes, since plaintiff testified that he had checked the brakes and had found them to be working properly. A third statement was to the effect that the jury should consider plaintiff's own negligence which contributed to the accident, since he was the one who checked the brakes.

The appellee contends that the statements were properly admitted because, on one hand, they correctly described plaintiff's duties of employment, and, on the other hand, they were aimed at showing there was no violation of the Safety Appliance Act. I cannot agree with the appellee; allowing the jury to consider these statements of defendant's counsel was prejudicial error.

Under certain circumstances, even a true statement can be prejudicially misleading. It is not the statement itself which is harmful, but

rather the implication carried with the statement when it is used in a given context. Such is the case in *Osborne v. Leonard,* 99 Ill.App.2d 391, 396, 240 N.E.2d 769, in which the court stated:

> "The introduction into defendant's opening statement of the fact that the police investigating officer issued no ticket, inferred that defendant was free of guilt. This was most damaging to plaintiff and clear error."

In the instant case the jury was instructed that contributory negligence would only be a mitigating factor if defendant violated the Federal Employer's Liability Act and would not be a factor at all if defendant violated the Safety Appliance Act. However, the jury was not given an instruction defining contributory negligence; and the jury was allowed to hear an argument which tells them to consider plaintiff's negligence in checking the braking system in reaching their verdict. This argument was allowed even though plaintiff's check of the brakes could have no relevance under the Safety Appliance Act. (*McCarthy v. Pennsylvania R. Co.,* 156 F.2d 877 (7th Cir. 1946), *cert. den.* (1947), 329 U.S. 812, 91 L.Ed. 693, 67 S.Ct. 635.) When counsel for the plaintiff attempted to explain to the jury in his rejoinder that Feigl's conduct could have no effect on the defendant's duty to adhere to and to comply with the provisions of the Safety Appliance Act, the defendant's objection to such an explanation was sustained. This compounded the error. No matter how much faith we put in the ability of the jury, the circumstances of the instant case could only have left them in a state of confusion, to the detriment of the plaintiff.

Considering the improper argument, the lack of an instruction defining contributory negligence, and the improper questioning of the witness, Curtis White, I believe the plaintiff is entitled to a new trial.